ARTHUR RUSSELL, Respondent, v. RECEIVERS OF
ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY, Appellants.

Kansas City Court of Appeals, March 22, 1897.

1. Dedication: PUBLIC STREET: RAILROAD CROSSING: NEGLIGENCE.
To constitute a street in a village it is not necessary there should be
a technical dedication or a right by prescription. If a street is
open and notoriously used as a public highway and so recognized by
a railroad by planking and maintaining a public crossing, it should
sound the whistle or ring the bell as required by section 2608,
Revised Statutes, 1889.

2. Railroads: PUBLIC CROSSING: CONTRIBUTORY NEGLIGENCE: STOP,
LOOK, AND LISTEN. Where the circumstances are such that the
traveler could reasonably hear, he is not required to stop, though his
view may be more or less obstructed; but if the circumstances are
such that his sense of hearing can only be properly exercised by
stopping, then he should stop so as to hear the usual signals, but the
burden is on the railroad to show the existence of the circumstances
requiring such stopping.

3. Appellate Practice: CONFLICTING INSTRUCTIONS: INVITED ERROR.
An appellant can not complain of an apparent conflict in instruc-
tions brought about by the giving of an improper instruction in his
behalf.

*Appeal from the Macon Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

*Gardiner Lathrop, Ben Eli Guthrie,* and *S. W.
Moore* for appellants.

(1) The accident did not occur at the crossing
of a traveled public road or street. Failure to give the
signals required by statute was, at most, only evidence
from which the jury might find defendants guilty of

negligence—it was not negligence *per se*. R. S. 1889, sec. 2608; R. S. 1889, ch. 140; *Bauer v. R'y*, 69 Mo. 219; *Hodge v. R'y*, 71 Mo. 50; *State ex rel. v. R'y*, 19 Mo. App. 104; *State ex rel. v. R'y*, 46 Mo. App. 446; *R'y v. Long*, 27 Kan. 684; *Cordell v. R'y*, 64 N. Y. 535. (2) No action can be maintained for failure to ring the bell or sound the whistle at the public road crossing seven hundred feet east of the place where the accident occurred. The statutory requirement is for the benefit of those using such crossing only. Evidence of such failure should have been excluded or withdrawn from the consideration of the jury. *Evans v. R'y*, 62 Mo. 49; *Rohback v. R'y*, 43 Mo. 187. (3) Plaintiff was guilty of contributory negligence, in that he failed to stop and listen before going upon a crossing—where an approaching train could not be seen by reason of obstructions to the view. The jury should have been instructed to find for defendants. *Henze v. R'y*, 71 Mo. 636; *Turner v. R'y*, 74 Mo. 602; *Hixon v. R'y*, 80 Mo. 335; *Kelly v. R'y*, 88 Mo. 534; *Stepp v. R'y*, 85 Mo. 229; *Smith v. R'y*, 52 Mo. App. 36; *R'y v. Grames*, 136 Ind. 39; *R'y v. Stommel*, 126 Ind. 35; *R'y v. Beale*, 73 Pa. St. 504; *Brady v. R'y*, 81 Mich. 616. (4) The instructions given were conflicting and contradictory. It is impossible to tell upon what theory the jury rendered their verdict. This constitutes reversible error. *Henschen v. O'Bannon*, 56 Mo. 289; *Stevenson v. Hancock*, 72 Mo. 612; *Price v. R'y*, 77 Mo. 508; *Spillane v. R'y*, 111 Mo. 555.

*Dysart & Mitchell* for respondent.

(1) The appellants complain that the court refused to withdraw from the jury, by instructions, all evidence as to the speed of the train, and failure to

sound the whistle or ring the bell in approaching the
public crossing, and in approaching the crossing at
Grant street. This contention is not tenable. It does
not appear that any objection was made or exception
saved on the admission or exclusion of evidence. A
party will not be permitted to wait and hear a question
answered, and testimony given, and speculate upon
the chances of its being in his favor, and if adverse,
rule it out and exclude it from the jury by an instruc-
tion. The objection to the evidence should have been
made when offered. *State v. Buchler*, 103 Mo. 203;
*Spotts v. R'y*, 111 Mo. 380; *Brown v. Foster*, 112 Mo.
297; *Mays v. Mays*, 114 Mo. 536; *R'y v. Elliott*,
117 Mo. 549; *Express Co. v. Bank*, 66 Mo. App. 275;
*Boot & Shoe Co. v. Bain*, 55 Mo. App. 264; *Logan v.
The Enterprise, etc., Co.*, 47 Mo. App. 510. (2) Ap-
pellants complain that the court did not, as a matter
of law, declare that Grant street crossing was not a
public crossing, and that defendants were under no
obligation or duty to ring the bell or sound the whistle
for said crossing. This contention is not tenable. It
was a question of fact for the jury, whether Grant
street crossing was a public crossing. If used by the
public as a crossing, with the consent or invitation of
the company, it was a public crossing. 1 Thompson
on Negligence, pp. 415–417; *Easley v. R'y*, 113 Mo.
236; see pp. 243 and 244; *Stevens v. R'y*, 67 Mo.
App. 356; *Lillstrom v. R. R.*, 20 L. R. A. 587 (53
Minn. 464); *R'y v. Lee*, 70 Texas, 496; *Ewen v. R'y*,
38 Wis. 634; *R'y v. Neill*, 30 S. W. Rep. 369; *Kelly v.
R. R.*, 28 Minn. 98; *R. R. v. Metcalf*, 44 Neb. 848.
A party is bound by the theory of the case presented
by *Tethrow v. R'y*, 98 Mo. 74; *Tomlinson v. Ellison*,
104 Mo. 105, 112. (3) Whether plaintiff was guilty
of such contributory negligence as to bar a recovery
was a question of fact for the jury, to be established

by the defendants.   This issue was found in favor of the plaintiff, upon instructions exceedingly favorable to the defendants. *Petty v. R. R.*, 88 Mo. 306; *Eichorn v. R'y*, 130 Mo. 575.   (4) The plaintiff is not barred of a recovery simply because he failed to stop; if he looked and listened, ordinarily, he is not chargeable with negligence as a matter of law.   It was a question of fact for the jury, whether defendant was guilty of contributory negligence, and whether it was necessary for him to stop, in addition to looking and listening. This principle is conceded and sharply drawn to the attention of the jury by appellants' instructions numbers 2 and 4.   *Huckshold v. R'y*, 90 Mo. 548; *Donohue v. R'y*, 91 Mo. 357; *Petty v. R. R.*, 88 Mo. 306; Buswell on Personal Injuries, secs. 161–163.

GILL, J.—On October 12, 1894, the plaintiff was severely injured in a collision with a passenger train of the Santa Fe road at a street crossing in the village of Elmer.   He brought this suit for damages, basing his claim on the alleged negligence of defendant's train men, in that no bell was rung or whistle sounded as the crossing was approached. Plaintiff had a verdict and judgment below for $1,600, and defendant appealed.

STATEMENT.

For a more complete understanding of the facts we here insert a plat used at the trial, and which is admitted to be substantially correct.

PLAT OF DEPOT AND GROUNDS.—EXHIBIT A.

From this sketch it will be seen that the line of defendant's road passes through the village from southwest to northeast. The town seems to have been laid off by the railroad company when the road was constructed, seven years or more before the accident. The two streets, called Missouri avenue and Grant street, do not appear, however, from the recorded plat to have been marked as streets across the right of way, but to have been brought up to the right of way (which is three hundred feet wide) and there, on both sides, came to an abrupt ending. It is clear, however, from the testimony, that Grant street was left open, used and maintained as a street or roadway from the southeast to the northwest, and passing the railroad depot, which, it will be seen, is on the north side of the main track. About one hundred feet east of the line of Grant street there were some stock pens and chute used to load stock into cars on the side track. And on the morning in question, according to the plaintiff's evidence, there stood some two, three, or four box cars, as indicated on the plat, on the side track and between the stock pens and Grant street. These, according to the evidence, obstructed a view of the railroad track to the east. The main track and south side track at Grant street were not more than eight or ten feet apart.

Plaintiff's evidence tended to prove that at about 8 o'clock in the morning of October 12 he came, with his wagon and team, from his home south of Elmer, intending to go north of the railroad to get a water-tank. The conveyance was a low log wagon with no bed, and the plaintiff sat on the hounds of the running gear. He drove through the village of Elmer, passing Dale's store on Missouri avenue and then turned across the railroad right of way and went to Grant street over the wagon road shown on the map. The land along this wagon road between Missouri avenue and Grant

street was about two feet lower than the railroad track and the surface of the two streets. Plaintiff testifies that he was driving very slow, that his wagon made little, if any, noise, and that he was continually looking and listening. When he came upon Grant street the plaintiff turned north, drove along without stopping, passed from under the cover of the box cars and stock yards across the south side track, and just when his horses had gotten onto the main track and he was then for the first time able to see east along the main track, he saw the defendant's passenger train coming onto him. He "slapped" his horses with the lines and attempted to jump out of the way, but was unsuccessful. The locomotive struck the hind wheels of the wagon crushing it to splinters and threw the plaintiff some fifty feet, breaking his leg and otherwise injuring him. According to the undisputed evidence the train men failed to ring the bell or sound the whistle when approaching the Grant street crossing. It seems that a whistle was sounded at what is called the Sand creek whistling post, a half to three quarters of a mile northeast of Elmer, but from that time on no signal was given.

A large number of instructions were given, some of which we shall notice later on.

I.   The defense may be stated under two heads, or propositions, contended for by defendant's counsel; *first*, that the collision did not occur at a public crossing, or "traveled public road or street," and that therefore the train men were not required to give the signals while passing over the eighty rods before reaching said Grant street, as is demanded by section 2608, Revised Statutes, 1889. And, *secondly*, it is contended that even if the railroad employees were negligent in that respect, yet plaintiff was himself in fault and guilty of contributory negligence for the reason that he

failed to *stop*, look, and listen before venturing to cross the track. Of these now in their order.

As to the first proposition, the evidence, as well as reason and authority, are all against it. The proof shows, and without contradiction, that Grant street was at the time "a traveled public road or street," and had been such continuously for seven years and since the location of the road, and the railroad had maintained the crossing by planking between the rails and tracks. It is not necessary that there should be a technical dedication by recorded deed, plat filed, or an absolute right acquired by prescription. It is sufficient if the road is open and notoriously used by the public as a highway, and is recognized by the railroad as such by planking and maintaining it as a public crossing at that point, thereby inviting its use as a public highway; and it is no defense under such circumstances that the road has not been legally laid out or established. 1 Rorer on R. R., p. 552; 1 Thompson on Neg., 416; *Kelly v. R'y*, 28 Minn. 98; *Lillstrom v. R'y*, 53 Minn. 464; *Ewen v. R'y*, 38 Wis. 615; *Railway v. Lee*, 70 Tex. 496; *State to use Ray County v. R'y*, 46 Mo. App. 466.

II. The second point must also be ruled against the defendants. There is no arbitrary rule requiring the traveler to come to a *stop* before venturing to pass over a railroad crossing. It is true that courts have said that the circumstances conceded to exist in particular cases, imposed that as a duty on the party about crossing a railroad track. But that was only in cases where there was unusual noise, the rattling of the wagon, the blowing of a gale, etc., such as a prudent man would see would deprive him of effectively using his sense of hearing unless he came to

a full stop. "If the crossing is particularly or notoriously dangerous, as being so noisy that it is impossible for one approaching it in a vehicle to hear the signals or noise of approaching trains, it is contributory negligence to proceed over the crossing without stopping to listen." Buswell on Personal Injuries, sec. 163. This was said with reference to cases where the view of the traveler was so obstructed by standing cars and the like that to look and see was impossible. It is at least, and at most, a question of what would an ordinarily prudent man do under similar circumstances. If a view of the railroad track is so obstructed that looking would be useless, then of course the traveler must rely on his sense of hearing; and if the particular circumstances are clearly such that his sense of hearing can only be properly exercised by stopping then it is incumbent on the traveler acting as one ordinarily concerned in his own safety, to stop his conveyance so as to be able to hear the usual signals of an approaching train.

But the proof here shows no such conditions as imperatively required the plaintiff to *stop* his wagon. The crossing is at a small station and quiet country village. No loud or unusual noises were shown to exist; no blustering winds were blowing, no rumbling of passing trains, no rattling wagon, or the like. Before defendants can deny plaintiff's right of recovery, they must satisfactorily show the existence of such circumstances as would impose on the plaintiff, while acting as an ordinarily prudent man, the duty of stopping his wagon before entering upon the railroad tracks. When approaching the crossing the plaintiff had a right to assume that defendant's train men would perform their duty, that they would give the statutory signal of blowing the whistle or sounding the bell eighty rods from the crossing. If they had per-

formed this duty, and if plaintiff is to be believed, then clearly he would have heard (since he says he was listening and there was no noise to prevent his hearing), and being warned, no damage would have resulted. We may well say, as was said by Judge NORTON in the *Petty* case, 88 Mo. 321: "The case in hand affords another example of the evil results flowing from the disobedience of railroads, in disregarding a statute enacted in the interest of humanity, and for the protection not only of the lives and property of those traveling on trains, but of the citizen and traveler on the highway as well. Its observance is a reasonable requirement, and for its nonobservance railroad companies should be held to a strict accountability. Where it is not observed and injury results, in an action to recover damages therefor, a clear case of contributory negligence must be established before the courts, as a matter of law, exempt them from liability on that ground."

The case here discloses a clear, if not aggravated, violation of law. The train was running at thirty to thirty-five miles an hour and was passing this station without stopping. It was allowed to run at that rapid speed across the highways of the village without once giving the signals required by the statute. This was the tenor of all the evidence adduced at the trial and there was not a word from the defense in denial.

As to the court's instructions, it is sufficient to say that they were quite liberal to the defendants, presenting every phase of defense to which they were entitled. If these instructions are subject to any criticism, it is because of giving defendants number 2, which is subject perhaps to the construction that plaintiff was bound to stop before attempting to pass the crossing.

APPELLATE practice: conflicting instructions: invited error.

VOL. 70 app—7

As already stated, this is not the law as applicable to the case. In other instructions the court properly defined plaintiff's duty in this respect and this was done too in instruction number 4 given at defendants' request. The defendants can not justly complain of an apparent conflict in instructions brought about by the giving of an improper instruction in their behalf and at their request.

Under the head of "Points and Authorities," defendants complain of the admission of certain alleged improper evidence; but as the record shows no objections or exceptions saved such matter is not here for review.

The judgment will be affirmed. All concur.