## THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant, v. KAVANAUGH et al.

### Division Two, May 21, 1901.

1. **Railroads:** FENCE: OPEN GATES: NOTICE: CONSTRUCTION: KILLING OF STOCK. Under Revised Statutes 1889, section 2611, requiring railroad companies to erect and maintain lawful fences with openings and gates therein at all necessary farm crossings, under the penalty of double damages for injuries to stock arising from failure to maintain such fences, etc., a railroad company was not liable for killing stock which had come on the track through a properly-constructed sliding gate carelessly left open by some unknown person without the actual or imputable knowledge or notice of the company.

2. ————: ————: NOTICE: ACTUAL AND IMPUTABLE. No liability results to a railroad or other corporation because of a defect continuing to exist, except upon one of two conditions: either actual notice of such defect, or such lapse of time occurring after the defect occurs, as will cause the law to imply notice. Absent these alternate conditions, liability does not arise (Gannon v. Gas Co., 145 Mo. l. c. 542, 543 and 550).

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED AND CAUSE REMANDED TO ST. LOUIS COURT OF APPEALS.

*Gardiner Lathrop, S. W. Moore* and *L. F. Cottey* for appellant.

Notwithstanding the gate in controversy may not have been a statutory gate, yet, as the evidence disclosed that the gate was shut and securely fastened at six o'clock on the evening preceding the accident, and that the stock escaped upon

the right of way sometime during the succeeding night, by reason of the gate being left open by some third person, there is no liability on the part of the defendant.    Ridenore v. Railroad, 81 Mo. 227; Binicker v. Railroad, 83 Mo. 660; Harrington v. Railroad, 71 Mo. 384; Box v. Railroad, 58 Mo. App. 359; Stephens v. Railroad, 34 Mich. 323; Railroad v. Swearingen, 47 Ill. 206; Railroad v. Dickerson, 27 Ill. 55; Vinyard v. Railroad, 80 Mo. 92.

*G. R. Balthrope* and *M. P. Balthrope* for respondents.

There is no point in defendant's counsel's claim that defendant had no knowledge of the draw-bar or gate being in such a condition that it could not be opened and shut by persons going through the same without great difficulty, and that such persons were liable on that account to leave the bars or gate open, for it had been in that condition for years, prior to the killing of plaintiff's cows, and had never been constructed in the first instance as a statutory gate, and had often been found open, and defendant's agents and servants frequently passed through the same whilst it was in that condition.    McMillan v. Railroad, 70 Mo. App. 568; Miller v. Railroad, 56 Mo. App. 72; Duncan v. Railroad, 91 Mo. 67.

SHERWOOD, P. J.—This cause, reported in 75 Mo. App. 78, has been certified to this court from the St. Louis Court of Appeals, on the dissent of BLAND, P. J., who dissented on the ground that the decision is in conflict with Harrington v. Railroad, 71 Mo. 384, and other cases.

This action is brought to recover double damages because four milch cows of plaintiffs were killed and two crippled on defendant's railroad track, by an engine, about seven o'clock on the morning of September 15, 1897, having passed through an open gate which led from plaintiffs' barn lot on the north side

of the railroad track across such track to another gate which led into plaintiffs' pasture on the south side of such track. At this point, a farm crossing had been constructed by defendant company in 1897, and since that time it had maintained the same at that point, as well as the two gates aforesaid. These gates were what is known as "sliding gates," that is, gates hung at one end on wooden cleats nailed to double posts, and at the other end fastened to a post by hooks and staples. About six o'clock on the afternoon of September 14, 1897, Dennis Kavanaugh, one of the plaintiffs, drove their milch cows over this crossing from the pasture into the barn lot. He testified that he securely fastened both gates.

This action is grounded on section 2611, Un. Revised Statutes 1889, the provisions of which are as follows: "Every railroad corporation formed or to be formed in this State, and every corporation to be formed under this article, or any railroad corporation running or operating any railroad in this State, shall erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands, with openings and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut, at all necessary farm crossings of the road, for the use of the proprietors or owners of the land adjoining such railroad .... and until openings, gates, etc., .... as aforesaid, shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done by its agents, engines or cars, to horses, cattle, mules or other animals on said road."

The plaintiffs alleged in their petition a violation of the foregoing section of the statute, in that defendant had failed to construct and maintain statutory gates at the crossing, and that by reason thereof the plaintiffs' cows escaped upon the railroad track. There is no satisfactory evidence as to how the gate

was opened.   One of the plaintiffs gave it as his opinion that it could not have been opened by the action of the wind or by stock rubbing against it, and that someone must have passed through during the night or early morning and left it open. There was evidence that the crossing was used by persons living in the neighborhood, and also that the section men at work on defendant's road and tramps passing along the railroad were in the habit of going through the gates.   There was also evidence that the gates were very heavy and were hard to open and shut.   But the testimony of the testifying plaintiff, who lived on the premises, and was, it seems, in the daily habit of using the gates, was that he could lift the gate in question with his right hand and walk right around with it; and in response to a question whether a strong boy could not lift the gate around, replied: "A pretty good boy, I guess maybe he could."   Thereupon, without introducing any testimony on its own behalf, defendant company asked an instruction in the nature of a demurrer to that offered by plaintiffs, which instruction the court refused to give.   The jury brought in a verdict in favor of plaintiffs for $220, which the court on motion, doubled.

It is unnecessary to consider the instructions asked and given on part of plaintiffs, as this case is controlled by other points.

In Harrington v. Railroad, supra, it was determined by this court, that if the proprietor of the land at the farm crossing was satisfied with a sliding gate, such as that described in this record (except that the latter is fastened with a hook and staples, while the former was not), that no one else had the right to complain, although it was not as convenient for the owner as though hung with hinges and fastened with a latch. And in that case it was further determined, that in such circumstances, the railroad company was not liable because some

one, without the knowledge of the company, left the sliding gate open through which the animals escaped upon the track.

So, also, in Fitterling's case, 79 Mo. 504, it was ruled that no recovery could be had against a railroad company, because of live stock going upon the track through a defective gate, and getting killed, without showing knowledge or notice to the company of such defect.

The same view of the necessity of notice, either actual or imputed, of the defect or insufficiency of such farm-crossing gate or fences has been repeatedly and uniformly held by this court. [Clardy v. Railroad, 73 Mo. 576; Case v. Railroad, 75 Mo. 668; Binicker v. Railroad, 83 Mo. 660; Ridenore v. Railroad, 81 Mo. 227; Laney v. Railroad, 83 Mo. 466.]

All these cases teach the doctrine, a doctrine accordant with reason and self-evident justice, that although it is the duty of a railroad company, under the statute, to construct and maintain suitable fences along the line of its road, and gates at farm-crossings, yet it is not the *insurer* of the sufficiency of fences and gates at all times, but it should exercise a suitable degree of care to keep such fences and gates in the same substantial condition as when at first properly constructed, but that if a defect should occur in either, of which such company should not have actual notice or which defect should not exist for such a length of time as, in contemplation of law, to impute notice to the company, then such company would not be liable. There is nothing in this record to indicate on the part of this defendant, either actual notice of the gate being open, or of sufficient time elapsing after the gate was left open, to impute notice to defendant of that fact. At the very farthest, only a few hours could have elapsed from the time the gate was opened and left open by some unknown person, until it was discovered to be open the next morning. This length of time was not sufficient to impute notice to defendant, hence, no lia-

bility accrued to defendant on that score. The rule of law as to actual knowledge or imputed notice of a defect existing, applies as well to railroad corporations as it does to municipal and all other corporations. Given, the existence of a defect requiring repair, liability for such defect continuing to exist, does not result except upon one of two conditions: either actual notice of the defect or lapse of time after the defect happens, sufficient to cause the law to imply constructive notice of such defect. Except under such alternate conditions, liability does not arise. [Gannon v. Gas. Co., 145 Mo. loc. cit. 542-3, and loc. cit. 550, and authorities cited, supra.]

So long as the gate remained shut and fastened, the gate was sufficient and plaintiffs' cows were secure. But when the gate was left open in manner as aforesaid, then it became wholly immaterial whether or not the gate was so constructed as to be "easily opened and shut," because, being left open, the method of its construction was not, and could not be, the *proximate cause of the injury;* the *opening* was that cause.

For the reason that this record shows that plaintiffs have no ground of action, the judgment will be reversed and the cause remanded to the St. Louis Court of Appeals, with directions to proceed as herein indicated. All concur.