## J. W. DICKINSON, Respondent, v. WABASH RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, November 9, 1903.

1. **RAILROADS: Killing Stock: Attorneys' Fees.** Plaintiff suing for the killing of stock should not ask for an attorney's fee for his attorney.

2. **———: ———: Gates: Fences: Proximate Cause.** Plaintiff crossed defendant's railroad at a farm crossing on the premises of G. and failed to shut the gate behind him. He was riding in a buggy, leading a mare followed by colts, taking them to G.'s pasture. The train passed by, the mare was frightened, got loose and ran back through the gate and on the right of way, and was killed by the train. *Held:* (1) Plaintiff was the immediate cause of his own misfortune, (2) The fact that the gate was a slide gate and not hung on hinges will not excuse plaintiff's negligence, (3) Nor does the fact that the gate was open much of the time, (4) Nor the further fact that the fence was bad.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander,* Judge.

REVERSED.

*Geo. S. Grover* for appellant.

(1) Both counts in the statement were fatally defective, so far as the gate was concerned. If the plaintiff was not an adjoining landowner, and no such allegation was made, he could not maintain this action on account of the gate not being equipped with a latch and hook as provided by section 1105 of the statute. For that reason all evidence as to the manner in which the gate was constructed should have been excluded. Railroad v. Kavanaugh, 163 Mo. 54. (2) There was no

proof of any negligent management of the train. No presumption of negligence can arise, in any case, from the mere fact that an accident has occurred followed by an injury. Yarnell v. Railroad, 113 Mo. 580. (3) Having sued under section 1105, the plaintiff can not recover under any other section of the statute, or at common law. Luckie v. Railroad, 67 Mo. 245. (4) The contributory negligence of the plaintiff in this case bars his recovery. Milburn v. Railroad, 86 Mo. 104. (5) The allowance of an attorney's fee in this case was a fatal error, as that part of section 1105 is void. Paddock v. Railroad, 155 Mo. 537.

*H. A. Kerr* for respondent.

(1) The appellant owed the same duty to respondent it did to the landowner as respondent's stock was on the land under contract with the landowner. Smith v. Railway, 25 Mo. App. 113; Payne v. Railway, 75 Mo. App. 14; Huss v. Railway, 84 Mo. App. 116, sec. 5. (2) It was the duty of appellant to erect and maintain a fence with gate thereon at all the necessary farm crossings. Sheridan v. Railroad, 56 Mo. App. 68; Miller v. Railroad, 56 Mo. App. 72. (3) The gate is a part of the fence, and it is the duty of appellant to have a lawful gate, and to see that it was not left open an unreasonable length of time. West v. Railroad, 26 Mo. App. 344; Freet v. Railroad, 63 Mo. App. 548; Morrison v. Railway, 27 Mo. App. 431; McMillan v. Railway, 70 Mo. App. 568. (4) Contributory negligence must be plead and proven to be available as a defense. Thompson v. Railway, 51 Mo. 190; Loyd v. Railroad, 53 Mo. 509; Stephens v. Macon, 83 Mo. 345; Petty v. Railroad, 88 Mo. 306. (5) If the injury occurs at a point on the railway track where the same is required to be fenced and has not been fenced, the company is liable regardless of the fault of the owner. Prather v. Railroad, 84 Mo. App. 86; Railway v. Ross, 37 Ind. 545.

ELLISON, J.—This is an action for damages resulting from the killing of two colts and injuring a mare, the property of plaintiff. The killing and injury was caused by one of defendant's freight trains. The judgment was for plaintiff and included an attorney's fee of fifty dollars. In view of the conclusion we have reached it will not be necessary to enter into an examination of defendant's attack on the sufficiency of the statement, or the allowance of an attorney's fee, further than to say plaintiff should not, under the ruling of the Supreme Court, have asked such fee. Paddock v. Railway, 155 Mo. 524.

It appears that B. F. Grimer owned a farm of 240 acres which was divided in half by defendant's railway, which runs through the place somewhat diagonally; but for practical purposes may be said to pass through from east to west. On the south side of the track was Grimer's wheatfield and his pasture, which were divided by a fence with a gate for convenient passing from one to the other. This gate was near to a farm crossing over the defendant's railway with a gate on each side. Plaintiff had arranged with Grimer to pasture the animals in question and on the day of the injury he entered the farm on the north and drove over, perhaps a quarter of a mile, to the railway crossing. He was in a buggy, driving two rather spirited horses and leading the mare, the colts following. At the crossing he met with two boys (Grimer's grand-sons) and they were with him thence on. One of them opened the north gate and plaintiff drove over the railway track and out of the south gate into the wheatfield. This south gate was open and plaintiff left it open. He passed out of the wheatfield into the pasture by going through the gate between them and proceeded into the pasture. As he was crossing the railway tracks he saw in the distance an approaching freight train. It was running at such slow speed that it did not get opposite him until he had got about fifty yards into the pasture. His team and the mare

became frightened and one of the boys turned her loose by stripping off the halter. She then ran back, followed by the colts, through the gate between the pasture and wheatfield, thence through the open south gate at the farm crossing onto the right of way and up the track to the point where the injuries were inflicted.

It is well settled law that the liability of a railway company is determined by a consideration of the point where the animal gets upon the track and not where it is killed or injured. Cecil v. Railway, 47 Mo. 246; Nance v. Railway, 79 Mo. 196; Jones v. Railway, 44 Mo. App. 16.

The fence north of the south gate was old, broken and out of repair, with the exception that the first panel immediately joining on the north was new.

From the foregoing it appears that plaintiff himself failed to shut the gate. through which his animals escaped from the field onto the right of way. It is therefore evident that he was the immediate cause of his misfortune and that he can not recover damages from defendant which were occasioned by his own omission.

He however seeks to avoid his neglect to close the gate by reason of the fact that it was not hung on hinges and secured with a latch as required by the statute; but on the contrary, was a panel and sliding gate which was opened by sliding back on slats nailed across a double post. And for the further reason that it was open when he passed through and was left open a great part of the time. And next, that it was not worth while to shut it as the railroad fence running north of the gate was old, down and out of repair, as alleged in his statement. Neither of these reasons are sound.

In the first place the gate was the gate permitted and accepted by Grimer, the owner and occupier of the land. The latches and hinges named by the statute were so specified for the convenience of the owner in opening and closing the gate. A panel or sliding gate will as readily turn horses as one hung with hinges. The ani-

mals passed through this gate by reason of its being open and not by its lack of hinges or a latch. In such condition Grimer had accepted it without complaint. The case, in this respect, can not be distinguished from Harrington v. Railway, 71 Mo. 384. The gate being *open* was the proximate cause of the injury and not its mode of construction. A. T. & S. Ry. v. Kavanaugh, 163 Mo. 54.

That the gate was open a great part of the time is true. The crossing was used by many of the neighbors in passing through the farm and they would sometimes close the gate and sometimes not. Grimer himself stated that he was indifferent whether it was open or shut since he had the adjoining field on that side in wheat and did not use it for stock. But the fact that others left it open did not excuse plaintiff, and did not confer upon him a cause of action for an injury which followed his own neglect.

The third excuse for not shutting the gate, viz., that, as alleged in plaintiff's statement, the fence north was out of repair and down will not suffice. The proximate and known cause of the animals going upon the track was the open gate. Plaintiff can not be allowed to conjecture that if the gate had been shut the animals would still have got on the track by running up the line of fence and passing through where it was down. Would they not more naturally, when they found the roadway blocked over which they came in, have turned out into the field, thus running away from the frightening train?

There was a charge that the killing was caused by the negligent management of the train. But that was seemingly abandoned and it was not submitted to the jury in the instructions.

The judgment is reversed. All concur.