## SMITH, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, May 14, 1907.**

1. **RAILROADS: Crossings: Prima Facie Case.** In an action against a railroad company for damages for killing plaintiff's steer, where the evidence was conflicting as ·to whether the steer was struck at a crossing and tossed on the right of way across the cattle-guard, or was struck upon the right of way after, entering across the defective cattle-guard, a demurrer to the evidence was properly overruled.

2. ———: ———: Highway. And in such case the evidence is examined and held, the crossing was a public highway which the defendant was not required to fence and error was committed by the trial court in refusing to so instruct.

Appeal from Pulaski Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*L. F. Parker* and *Woodruff & Mann* for appellant.

(1) The court erred in refusing to give instruction No. 2 asked by defendant, which was as follows: The court instructs the jury that the road crossing testified to by the witnesses was in contemplation of law a public crossing, and the defendant was not required to fence its road at that point. Walton v. Railroad, 67 Mo. 56; Luckie v. Railroad, 76 Mo. 639; Brown v. Railroad, 20 Mo. App. 427; Jackson v. Railroad, 66 Mo. App. 506; Russell v. Railroad, 70 Mo. App. 88. (2) The

court erred in refusing to give defendant's peremptory instruction to the jury to find for the defendant, at the close of all the evidence in the case. Railroad v. Gholson, 66 S. W. 1018, 24 Am. & Eng. R. R. 677; Payne v. Railroad, 136 Mo. 594; Railroad v. Niedlinger, 110 Ga. 329, 35 S. E. 364; Hite v. Railroad, 130 Mo. 132.

*M. Selph* for respondent.

The evidence was amply sufficient to show that the crossing involved was not a public crossing, either *de jure* or *de facto,* and it was not error to submit the question whether it was such crossing to the jury. 1. Because it was not a public crossing, the public not using it and having no right to use it, and the land-owner having the right to fence or close it up. Jenkins v. Railroad, 27 Mo. App. 578. 2. Because the question as to whether it was a public crossing is a question of fact, to be found or inferred from other facts established by the evidence—such as its user or nonuser by the general public, and the right to close it—and is therefore a question exclusively for the jury. Mosby v. Commission Co., 91 Mo. App. 500; Erhart v. Dietrich, 118 Mo. 418. 3. Because an instruction must not be based upon testimony which is merely the statement of a legal conclusion, nor upon an inadvertent statement of a witness, which is shown by other parts of the record to be a mere inadvertency of expression. Rice v. Smith, 171 Mo. 331; Luckel v. Building Co., 177 Mo. 608.

GOODE, J.—Plaintiff sued for double damages for a steer killed by a locomotive. Some of the evidence indicates that the animal was struck by the locomotive on the crossing where a highway intersected the railroad and tossed on the right of way beyond the cattle-guard, which was defective. In view of these two possibilities the court rightly refused to direct a verdict for defendant. It was not entitled to this direction even

if the crossing was a public one, as it contends, the evidence not showing with certainty that the collision was on the crossing. The court left it to the jury to decide whether or not the crossing was a public one and therefore to be fenced by the railroad company. Defendant's counsel say this was error as the proof was uniform in favor of its public character and, therefore, the court should have instructed the jury to give a verdict for defendant if they found the steer was struck on the crossing, instead of requiring them to find also that the crossing was public. What appears beyond dispute is that there had been an open crossing of the wagon road and the railway at the place in question for many years, and probably since the railway was built. The crossing was fifty-three feet wide, had always been protected by wing fences and cattle-guards and the usual sign warning travelers to look out for the cars. To the north of the track the highway extended indefinitely, but sixty yards south it ended at a fence, in which formerly a gate was maintained, but some months before the steer was killed, the gate had been closed by wires. It is certain that an open road ran from sixty yards south of the railway, across it and through the country to the north. This road was used mainly by four families of the neighborhood, but could be used by any one who had occasion to travel over it. Plaintiff, whose testimony is about like that of the other witnesses, swore concerning the road as follows:

"Q. Explain how the fences were all situated on the south side of that road? A. It was open about sixty yards south of the crossing, the north was an open road.

"Q. Open lane running north of that? Open lane running north and south of the road; about sixty yards south of the road.

"Q. Was there any public road, public highway

125 App—2

crossing the railroad between these two cattle-guards? A. Yes, sir.

"Q. Explain what was the condition of the fence there; what you mean by a public highway? A. There was an open crossing there; there was nothing to keep people from going over the railroad at that point.

"Q. Was that open on both sides of the railroad? A. Only sixty yards south of the track, but the north end was all open.

"Q. Now what, if anything, closed it on the south side of the track? A. A gate wired and poled up.

"Q. Had you known that for two years prior to that time? A. Yes, sir.

"Q. During any of that time had this been an open highway that you know of? A. It had been used some in passing there.

"Q. In what manner had it been used? A. As a neighborhood road."

The crossing in controversy was shown to have been a public one within the meaning of the law that railway companies are not required to fence at public crossings, though in point of fact, it may have been opened by the adjacent land owners for their convenience. The essential facts were that every one who wished had the right to use it and did use it. It would be unreasonable to say the railway company was bound to close up such a highway, or, indeed, would be permitted to close it. This case comes within the authority of several decisions in this State. [Walton v. Railroad, 67 Mo. 56; Brown v. Railroad, 20 Mo. App. 427; Jackson v. Railroad, 66 Mo. App. 506; Russell v. Railroad, 70 Mo. App. 88. See, too, 3 Elliott, Railroads, sec. 1193; 1 Rorer, Railroads, p. 622.]

For error in refusing defendant's request to instruct the jury that defendant was not required to fence the crossing, the judgment is reversed and the cause remanded. All concur.