SOWDERS, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY and ST. LOUIS,
MEMPHIS & SOUTHEASTERN RAILROAD
COMPANY, Appellants.

St. Louis Court of Appeals, September 23, 1907.

1. **RAILROADS: Killing Stock: Point of Entry Upon Right of Way.** It is the point at which an animal enters upon a railroad right of way and not the point of collision with a train which determines the liability or non-liability of a railroad company killing such animal.

2. ——: ——: **Point of Collision.** And in the absence of proof as to where an animal, killed by a railroad train, entered upon the right of way, it is presumed that it entered upon the right of way at the point of collision; but that presumption is rebuttable.

3. ——: ——: **Presumption: Instruction.** In an action against a railroad company for killing a cow, where there was circumstantial evidence tending to show that the cow entered upon the right of way through a cattle-guard before it was struck, it was not error to refuse an instruction for the defendant to the effect that in the absence of proof to the contrary, she was presumed to have entered on the track at a public crossing where defendant claimed the cow was struck.

4. **PRACTICE: Instruction: Failure to Instruct.** Under section 748, Revised Statutes 1899, it is not error for a trial court to refuse to require a party to offer instructions defining such party's theory of the case, nor is it error for the court to refuse to give instructions of its own motion to that effect.

5. **RAILROADS: Killing Stock: Instructions: Defining Lawful Fence.** In an action against a railroad company for killing a cow in violation of section 1105, Revised Statutes 1899, where all the evidence tended to show that the cow entered upon the defendant's right of way over a defective cattle-guard, it was unnecessary for the court in the instruction to define a lawful fence although there were allegations to the effect that the adjacent fence was defective.

Sowders v. Railroads.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*L. F. Parker* and *Moses Whybark* for appellants.

(1) It is the place where the animal gets on the track and not the place where it is injured or killed, that determines the liability; and the testimony fixes only one point of the animal's entry, and that was at the public crossing. Bumpas v. Railroad, 103 Mo. App. 206; Dickinson v. Railroad, 103 Mo. App. 335; Redmond v. Railroad, 104 Mo. App. 555; Kimball v. Railroad, 99 Mo. App. 340; Wier v. Railroad, 48 Mo. 558. (2) The evidence that the cow was struck elsewhere than on the crossing, or that she entered upon the railroad through the fence, or over the cattle-guard, is so vague as to be nothing more than conjecture. Hess v. Railroad, 36 Mo. App. 163; Reed v. Railroad, 112 Mo. App. 575. (3) If instructions given fairly cover the issues in a case, a failure to give a particular instruction is not error, in the absence of a request. If a party desires to have all grounds specifically instructed on, he must announce them, or he will not be heard to complain. And this is the extent the cases in Missouri bearing on the question have gone. Bindbeautal v. Railroad, 43 Mo. App. 463; Mitchell v. Bradstreet Co., 116 Mo. 226; Coleman v. Drane, 116 Mo. 387; Nolan v. Johns, 126 Mo. 159; Browning v. Railroad, 124 Mo. 55; Boettger v. Iron Co., 124 Mo. 87; Tetherow v. Railroad, 98 Mo. 74.

*J. V. Conran* for respondent.

NORTONI, J.—The defendant appeals from a judgment against it under the double damage act (sec. 1105, R. S. 1899), for having killed plaintiff's cow, which, it is alleged, came upon defendant's track by reason of its failure and neglect to erect and maintain sufficient fen-

ces and cattle-guards as required by the statute mentioned. It appears from the evidence on the theory of plaintiff, that his cow passed from the public road over or through defendant's cattle-guard adjacent thereto, and inside of the railroad right of way just north of the public road crossing; that while so inside the right of way, defendant's locomotive and train south-bound collided therewith at a point about twenty feet north of the cattle-guard, by the force of which collision the cow was thrown to the southward over the cattle-guard, falling in the public road between the rails of its track, and about the third railroad tie south of the cattle-guard, at which point within the public road, the cow was mangled beneath the locomotive and dragged about one hundred and eighty yards to the south, where the train was stopped and the carcass removed.

Defendant's theory of the case is that the cow was lying upon its track at the crossing of the public highway when the collision occurred, and it is not liable therefor under the double damage act, as it is neither permitted nor required to fence its tracks across the public highway. [Accord v. Railroad, 113 Mo. App. 84, 87 S. W. 547.] Several witnesses testified on the part of plaintiff that the cattle-guard was not sufficient, as required by the statute supra, to prevent cattle from passing from the public highway over the same into the railroad right of way. The cattle-guard consisted of an excavation under the track with rails or crossbars lengthwise of the track across the same. This excavation had been permitted to fill nearly or almost to the top by the accumulation of dirt and gravel therein, so that cattle could, and as was shown, had been in the habit of walking over the same, notwithstanding the crossbars or slats mentioned. A small boy testified that he saw the plaintiff's cow pass over the cattle-guard. No one gave evidence in the case who actually saw the collision. Several for the plaintiff testified that while there was ap-

parent no blood or hair inside the right of way where the locomotive is alleged to have run upon the cow, the stones or ballast on the track about twenty feet north of the cattle-guard was torn up and disarranged, indicating that as the point of collision. One witness said: "It looked like the locomotive run under her and into her feet and tore up the rock. . . . Yes, sir; she was struck inside of the right of way. It was plain to be seen. She was pitched on the road crossing from the cattle-guard, on the third tie after it went over the cattle-guard." And it was also shown there was cow's hair resembling that of the cow in question, on the slats or bars of the cattle-guard, indicating the cow had been dragged across the same to a point in the public road, where, in the language of one of the witnesses, she was first dumped. One witness testified:

"Q. I will ask you where she was killed, Mr. Ward? A. She was struck north of the crossing, about twenty feet from the cattle-guard in the right of way.

"Q. Inside the right of way? A. Yes, sir, that is as near as the signs was; you could see where she was struck; she was dumped—the first place she was dumped was the third tie outside the public road; that is not in the crossing; she was dumped over and the third tie is where she went under; she went under the locomotive in between the ties; she was drove in between the ties and got under the locomotive and was carried about fifty rods."

There was but one witness introduced by defendant. This was its section foreman, who was a mile and a half distant at his home, at the time of the occurrence. He did not see the collision and had no actual knowledge of precisely where it occurred. He gave evidence to the effect that on the following day he found and buried the cow, traced the blood, etc., to the crossing of the highway, where he investigated and found the cow had been lying on the track and was run upon by the locomo-

tive at a point where plaintiff's witness said she was first "dumped" after having been pitched from the north by the locomotive over the cattle-guard. Witness also said: "I looked both ways; I could not see any place only from the road crossing south that there had been anything drug. She was struck undoubtedly on the crossing." On the evidence of this witness, defendant requested and the court refused to instruct as follows:

"The court further instructs the jury that if you find from the evidence that the plaintiff's cow was killed by defendant's train, and at the time she was struck by the same she was on a public crossing over defendant's railroad, then the presumption is, in the absence of proof to the contrary, that she entered on its track where struck, and the plaintiff cannot recover; and the burden is on the plaintiff to show to your satisfaction by a preponderance of the evidence that she did not enter on the track on the public road, but at some point thereon where the defendant was required to fence."

In actions under the railroad fence law, there are two propositions essential to notice here as well settled. They are: first, it is the point at which the animal enters the right of way and not the point of collision which determines the liability or nonliability of the defendant on account of killing stock. [Accord v. Railroad, 113 Mo. App. 84-98; Bumpas v. Railroad, 103 Mo. App. 202, 77 S. W. 115; Dickinson v. Railroad, 103 Mo. App. 332, 77 S. W. 88; Redmond v. Railroad, 104 Mo. App. 651, 77 S. W. 768; 3 Elliott on Railroads, sec. 1201.]

Second, cases often arise where the animal is killed at a point where the railroad is required to maintain proper fences and not a word or circumstance in proof indicates the point at which the entry upon the right of way was made. In such cases, it has been frequently determined to be a legitimate and proper inference proceeding from the facts of collision at such a point, that

the animal entered the right of way at the point where the collision occurred; and such inference is well established in the adjudicated cases as a disputable presumption going to supply the omitted fact pertaining to the point of entry, and as such, is frequently acted upon by the courts to that end, as said, in the absence of proof to the contrary. [Jantzen v. Railroad, 83 Mo. 173; McGuire v. Railroad, 23 Mo. App. 325; Pearson v. Railroad, 33 Mo. App. 543; 3 Elliott on Railroads, sec. 1214.]

As is well known, presumptions, as a general proposition, arc divided into two classes: irrebuttable presumptions, or presumptions of law, and rebuttable presumptions, or presumptions of fact. Some presumptions are irrebuttable and proceed as an arbitrary rule of law to the effect that a particular inference of fact shall necessarily be drawn from certain established facts. [22 Am. and Eng. Ency. Law (2 Ed.), 1234; Ham v. Barrett, 28 Mo. 388.] There are other presumptions of law, however, which are rebuttable as pointed out by Mr. Lawson in his work on Presumptive Evidence, 560. [16 Cyc. Law & Proc. 1073.] However this may be, the presumption referred to in the instruction and sought thereby to be invoked is a presumption of fact. All presumptions of fact proceed from other facts in proof (Lawson on Presumptive Evidence, 652), and supply an omitted fact in accord with the dictates of human experience on like questions. They are therefore rebuttable or disputable as a matter of course. Inasmuch as such presumptions merely amount to an assumption of what may be true, as indicated by the probabilities and the rationale of experience, they may be entirely overcome or removed from the case by competent proof going to supply the fact presumed. [Lawson on Presumptive Evidence, 559; 22 Am. and Eng. Ency. Law (2 Ed.), 1235-1236; Moreau v. Branham, 27 Mo. 351; Ham v. Barrett, 28 Mo. 388.] And it is the

well-established law that a presumption of fact will not be permitted to contradict or overcome facts actually proved.. [Lawson on Presumptive Evidence, 659; Whitaker v. Morrison, 44 Amer. Dec. 627; Morton v. Heidorn, 135 Mo. 608-617.]

In the case at bar, there was much circumstantial evidence going to establish the plaintiff's cow entered the right of way by passing over a defective cattle-guard and was struck about twenty feet inside thereof. Besides this, a small boy gave evidence that he saw the cow pass over the cattle-guard. Now in view of this evidence as to where the cow entered upon the right of way, there was certainly no absence of proof as to the point of entry such as is essential to authorize the presumption referred to. The plaintiff, in that state of the proof, was not entitled to an instruction to the effect that, in the absence of proof thereon, the presumption was the cow entered at the point of collision, for the reason that the proof supplied the fact as to the point of entry and removed whatever presumption would otherwise have obtained. The instruction asserts a sound proposition of law, no doubt, in a proper case, and it is possible it might have been given by the court without error, as it states on its face that the presumption obtains only in the absence of proof. However that may be, it was certainly not error to refuse it in this case where the proof supplied the fact which the instruction sought to supply by directing the attention of the jury to the presumption which obtains in the absence of proof.

Now while the proof on the part of the defendant tended to present a situation where the evidence failed to disclose the essential fact of the point at which the cow entered upon the right of way, the case was not of that class, in view of the proof introduced on the part of the plaintiff tending to establish the point of entry to have been over the cattle-guard, and therefore, instead of there being an absence of proof, this presented

rather a conflict of evidence on that matter. In this situation of affairs, the case is not one where there is such an absence of proof as to invoke and render proper the presumption referred to in the instruction. The evidence having overcome or removed this disputable presumption, the court did not err in refusing to refer to or treat with it in its charge. Such reference could only tend to confuse, rather than enlighten the jury with respect to their duty in the case.

2. Plaintiff's counsel requested no instructions and defendant's counsel moved the court to require him to make requests indicating his theory of the case. This the court overruled, whereupon defendant's counsel then moved the court *ore tenus* to instruct the jury of its own motion on the part of plaintiff indicating the theory upon which plaintiff was entitled to recover, if any. The court overruled this request as well, and defendant assigns error thereon. The matter must be determined by reference to the statute. Section 748, Revised Statutes 1899, provides: "When the evidence is concluded and before the case is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing and shall be given or refused. The court may, of its own motion, give like instructions." Now it has frequently been adjudged in civil cases that there is nothing mandatory in this statute unless the court is first moved by the party desiring the instructions. There is no error in the court's submission of the cause without instructions, if none are requested, for the right to have the court declare the law to the jury is a personal privilege of the litigant, which may be waived by him. And so it is, the court may submit the cause without instructions on its own motion, if it sees fit so to do or it may instruct on its own motion, if it so desires and is of the opinion that the instructions would subserve the ends of justice.

[See Hall v. Railroad, 124 Mo. App. 661, 101 S. W. 1137-1140, and the several authorities therein cited.]   There is certainly nothing in the statute above referred to which tends to support the argument that the court is required thereby to instruct for the plaintiff at the defendant's request or instruct for the defendant at the plaintiff's request.   Nor is there aught therein which would authorize the court to require either the plaintiff or the defendant to submit requests for instructions when they desire to waive their rights in that behalf. There is certainly no word in the statute lending countenance to the idea that the court should instruct "of its own motion" for either side when moved to do so by counsel representing the adverse party, for indeed such practice would be instructing, not of its own motion, but upon the motion of the adverse counsel as of its own motion.   In consonance with the broad view on the subject manifested by the several adjudicated cases referred to, it is obvious that either party may waive his right to instructions and if the adverse party desires any particular theory of the law presented, it is his duty to submit a request incorporating such theory on his own behalf, otherwise he will be precluded under the doctrine of non-direction, from predicating error thereon.   Now to adopt the argument of counsel for defendant in this case would lead to inevitable confusion, for it is known that parties in the appellate court can be bound only by the theories assumed by themselves or the court of its own motion, in the conduct of the case in the court below, and were the trial court to proceed to instruct the same on behalf of plaintiff at the motion and request of the defendant, or vice versa, this would offer a premium on the efforts of adverse counsel to lead the court into error in favor of his adversary with the purpose to predicate an assignment of error thereon to the end of reversing the judgment on appeal.   While it is no doubt true in such cases the doctrine could be

invoked in the appellate court to the effect that whosoever moves the court to commit error is estopped thereby from predicating error thereon, confusion without end would result from such practice nevertheless, inasmuch as in many instances the record would disclose error in favor of one, without disclosing it to have been initiated by adverse counsel. It seems the only sound position for the courts to assume on the question is that broad and liberal construction of the statute manifested in the adjudicated cases, which leaves the parties untrammeled to request instructions or waive their rights in that behalf as they see fit to do, and commit or discharge them to or from error on the theories they have voluntarily selected unless in the case of an erroneous instruction or ruling given by the court of its own motion. The result of this doctrine is that if no instructions are requested or given, then it is a mere case of non-direction, which does not amount to reversible error. The rule is fair and just.

3. Complaint is made because the court gave no instruction defining a lawful fence. None was requested by either party and what has been said last above should be sufficient on this score. It may be added, however, that while the petition predicated on the negligence of defendant in failing to maintain lawful fences, it also assigned failure to maintain a cattle-guard sufficient to prevent cattle, etc., from going upon the right of way. Either one of these specifications was a sufficient assignment of negligence to entitle the plaintiff to recover under the provisions of sec. 1105 supra, provided it be established by the evidence. Now while the proof tended to show that fences along the sides of the right of way were defective, no word of evidence indicated the cow passed through these fences or came to her death by reason of a defective fence. All the proof tended to show the entry was over and on account of the defective cattle-guard, admittedly insufficient.

This being true, we are unable to appreciate the relevancy of an instruction defining a lawful fence, even had one been requested.   The proof wholly failed to support the allegation that the cow came to her death because of a defective fence, and the recovery was had on account of a defective cattle-guard only.   At least with the case in its present posture, the jury's verdict affirming the issue for the plaintiff, where there is no proof of a defective fence and abundant proof of a defective cattle-guard, it must be understood the cow passed over the cattle-guard, and not through the fence.

The judgment is affirmed.   It is so ordered.   *Bland, P. J.,* and *Goode, J.,* concur.