## J. M. WINTERS, Respondent, v. WALKER D. HINES, Director General of Railroads, Appellant.

Springfield Court of Appeals, March 25, 1921.

1. **RAILROADS: Duty to Fence not Complied with at Public Crossing by Providing Gates.** The statute relative to the fencing of railroad rights of way makes no provision for gates anywhere except at farm crossings, and, if a crossing was a public crossing, it was the company's duty to put in cattle guards and wing fences, and it could not discharge its duty by putting in gates for the use of the public.

2. ———: **Not Liable for Stock Killed at Crossing on De Facto Road.** A railroad may recognize a *de facto* road and treat it as if it were a road *de jure*, and, when it does so, is not liable for stock killed or injured on the crossing, though the road was not a legally establish road.

3. ———: **Road Actually Used "De Facto Road," Necessitating Cattle Guards and Wing Fences.** A road actually existing and traveled by the general public for several years was a *"de facto* road," and a railroad company would have been justified and should have treated it as a public road and provided cattle guards and wing fences at a crossing thereon.

4. ———: **Not Permitted to Deny Duty to Fence at Crossing with Gates.** A railroad company which failed to put in cattle guards and wing fences at a crossing, but constructed fences with gates for the use of the public, could not deny that it was required to fence its road at that point on the theory that it was a public road.

5. ———: **Liable for Acts of Public in Leaving Gates Open at Crossing Without Cattle Guards.** A railroad company is not authorized to put in gates for the use of the general public at any kind of a road crossing, but, if it recognizes the right of the public to use the crossing, must leave it open and put in cattle guards, and, where it fails to do so, and puts in gates for the use of the public, it assumes responsibility for their acts in leaving the gates open, permitting stock to go on the track.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*W. F. Evans* and *Ward & Reeves* for appellant.

(1) We admit that if a railroad be constructed across a traveled road, such as the one involved in this case, then the company must maintain wing fences and cattle guards (and not-gates), even though the road has not been established by public authority, nor funds expended thereon. Sikes v. Railroad, 127 Mo. App. 326; Dow v. Railroad, 116 Mo. App. 555; Roberts v. Railroad, 43 Mo. App. 287. (2) But the principle announced in the cases last cited is not to be applied to a case where, as here, the railroad was established before the alleged public road, and in such case, before the railroad is bound to dispense with its side fences or gates and build cattle guards and wing fences, the road crossing over the right of way of the railroad must be condemned and paid for. Franklin County v. Railroad, 210 S. W. 874; St. L. & S. F. Ry. Co. v. Gordon, 157 Mo. 71; Grand Ave. Ry. Co. v. People's Ry. Co., 132 Mo. 34; Kansas Suburban Belt Ry. Co. v. Railway, 182 Mo. 599; Kansas City v. Railroad, 102 Mo. 633. (3) The plaintiff must recover if at all, upon the cause of action pleaded, and not upon some other or different cause of action. Hufft v. Railroad, 222 Mo. 286; Grisswold v. Haas, 145 Mo. App. 578; Fitch v. Ackerman, 150 Mo. App. 148; Adler & Co v. Railroad, 110 Mo. App. 339; Engle v. Ferrell, 126 Mo. App. 557; Powell v. Shipps, 85 Mo. App. 467. (4) The questions submitted to the jury should have been within the issues made by the pleadings, as well as by the evidence. State ex rel. v. Ellison, 270 Mo. 645; State ex rel. v. Ellison, 176 S. W. 11; Degonia v. Railroad, 124 Mo. 589; Hufft v. Railroad, 222 Mo. 286; Mansur v. Botts, 80 Mo. 668; Bank v. Murdock, 62 Mo. 70.

No brief for respondent. '

COX, P. J.—Action for single damages for frightening a horse and running him into a trestle on defend-

ant's track.  The petition was in two counts; the first count based on failure to erect and maintain good and sufficient fence by reason of which the horse came upon the track and was then frightened by a locomotive and train and ran into the trestle and was killed.  The second count was based on negligence of the employees in charge of the train in not stopping after they discovered the peril of the horse.  At the close of the testimony, plaintiff elected to stand on the first count.  The jury returned a verdict for plaintiff for $200 on which judgment was entered and defendant has appealed.

The evidence shows that from Bragg City, a road runs east along the north side of the railroad about one-half mile, then crosses the railroad and continues east on the south side.  From the point where this road crosses the railroad, a road runs on south.  The trestle upon which the horse ran and was killed is about one-half mile east of the crossing.  From the crossing both east and west, the right of way was fenced.  There were no cattle guards or wing fences at the crossing but gates were put in by the appellant on either side and persons using this road passed through these gates in crossing the railroad.  This road was used by the general public and had been so used for three or four years.  These gates were often left open by persons traveling the road and stock passed through them onto the right of way of the railroad and had often been driven out by the section men.  One of these gates was open part of the day of the accident and was found open after the accident on that day.  The horse was first seen on the track with some other horses about 100 yards east of the crossing and was there when the train approached going east.  This train frightened the horse and he ran onto the track and ran part way over the trestle when he fell and broke his leg and had to be killed.  At a point about half-way between the crossing and trestle, there was a place in the fence on the south side of the right of way where some of the wires were down, but the evidence

does not disclose that the horse entered the right of way at that point but it is conceded by appellant that the horse entered the right of way by passing through one of the gates where the road crosses the railroad. Shortly after this accident, cattle guards were put in and the gates then left open. There was no conflict in the testimony except as to the condition of the gates and the mode of fastening them.

We are cited to cases by appellant which hold that if a gate at a farm crossing is left open by some one other than the employees of the railroad company and the agents or servants of the company are not negligent in discovering it, the company is not liable. [Rowan v. Railroad, 198 Mo. 654, 96 S. W. 1009; A. T. & S. F. Ry. Co. v. Kavanaugh, 163 Mo. 54, 63 S. W. 374; Rowan v. Railroad, 82 Mo. App. 24.]

It now contends that under the authority of these cases, it cannot be held liable for the gate at the crossing being open, if left open by some unknown person in passing through. If the company had discharged its full duty in putting in these gates and in keeping them in repair, this position would be sound but we do not agree with that contention.

The duty of defendant must be measured by the circumstances surrounding it and its relation to the road and the people who used it. It does not appear whether or not the right of way was fenced prior to the time that the public began to use this road and began to travel across the railroad but it does appear that this road and crossing had been used by the public for three or four years and that during all that time, the right of way was fenced and these gates maintained by defendant for the use of the public in crossing its track while traveling this road. The statute prescribes the duty of a railroad in relation to fencing its right of way and providing crossings. Away from towns and switches it must fence its right of way and must construct cattle guards and wing fences at public crossings. There is no provision for putting in gates any-

where except at farm crossings. If this place where this road crossed appellant's track was a public crossing, then it was its duty to put in cattle guards and wing fences. It cannot discharge that duty by putting in gates for the use of the public and then trust the public to keep the gates closed. If it were not a public crossing within the meaning of the statute, then it should have omitted the gates and built the fence without leaving an opening

It is well settled in this State that a railroad company is not required to pass on the legality of the establishment of an alleged public highway and fence across it or put in a crossing and cattle guards at its peril, but it may recognize a *de facto* road and treat it as if it were a road *de jure* and when it does so, it is not liable under this statute for stock killed or injured at or on such a crossing even though the road is not a legally established road. We think this road was a *de facto* road. *De facto* means actually existing, and this road had been travelled by the general public for three or four years and therefore, it had actually existed for that length of time and the appellant would have been justified in treating it as a public road and, in fact, should have so treated it. [Brown v. Railroad, 20 Mo. App. 433; Jenkins v. Railroad, 27 Mo. App. 578; Johnson v. K. C. P. & G. Ry. Co., 66 Mo. App. 506; Smith v. Railroad, 125 Mo. App. 15, 102 S. W. 593; Le Master v. Butler County Ry. Co. (Mo. App.), 190 S. W. 38; Luckie v. Railroad, 76 Mo. 642.]

The appellant did not recognize this road as a public road for it could only do that by putting in cattle guards and wing fences and leaving the way open for the public to travel. Having failed to follow the statute applicable to public crossings, it cannot now be heard to say that it was not required to fence at that point. It has by its own conduct assumed the position that fences were required and must therefore be held to that position. We do not think appellant's action in putting in and maintaining the gates at this road crossing was either

justifiable or excusable. The law does not provide for, or permit, gates to be put in anywhere except at farm crossings or such places as may be convenient for the use of adjoining proprietors. The railroad company is not authorized to put in gates for the use of the general public at any kind of a road crossing. At such places it must, if it recognizes the right of the public to use the crossing, leave it open for their free use and must •put in cattle guards to keep stock off its right of way beyond the crossing. Having failed to do that in this instance but having chosen, rather, to put in gates for the use of the public, it thereby assumed responsibility for the use of the gates by the public and their acts in leaving the gates open are chargeable to it.

The evidence introduced by appellant in this case shows that the gates were kept there for the use of the public and were so used; that the public often left them open and defendant's employees often found them open and found stock on the right of way that had entered through the gates. There was no controversy as to the horse going onto the track by going through one of these gates and being frightened by appellant's train and running into the trestle.

Complaint is made of error in instructions for plaintiff and we think they are objectionable in some respects, but on the conceded facts, the liability of appellant is so clearly shown that the jury could not have been misled by what error appears in the instructions and for that reason we deem it unnecessary to discuss them.

The judgment is clearly for the right party and is, therefore, affirmed.

Judgment affirmed.

*Farrington* and *Bradley, JJ.,* concur.