251 S.W.2d 355 (1952)
DE VOTO
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28403.
St. Louis Court of Appeals, Missouri.
September 16, 1952.
Motion for Rehearing or to Transfer to Denied October 17, 1952.
Carroll J. Donohue, Salkey & Jones, St. Louis, for appellant.
Frank Coffman, E. H. Schwarzenbach, Thomas M. Gioia, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied October 17, 1952.
*356 ANDERSON, Justice.
This is an action by George J. DeVoto, as plaintiff, against defendant, St. Louis Public Service Company, to recover damages for personal injuries alleged to have been sustained by plaintiff on March 25, 1948, when he was struck by one of defendant's busses while crossing Grand Boulevard in the City of St. Louis. The trial below resulted in a verdict and judgment for plaintiff in the sum of $7,000. From this judgment, defendant has appealed.
The accident happened within the intersection of Grand Boulevard and Shenandoah Avenue at about 8:45 p. m. Grand Boulevard runs north and south, and Shenandoah Avenue runs east and west. The record discloses that Shenandoah Avenue at its intersection with Grand Boulevard does not extend directly across the latter, but that the north curb line of Shenandoah Avenue, west of Grand Boulevard, is approximately a prolongation of the south curb line to the east. At the time plaintiff was injured he was walking directly eastward in the pedestrians' crosswalk from the west curb of Grand Boulevard to the southeast corner of the intersection. The defendant's bus which was involved was westbound on Shenandoah Avenue.
The charges of negligence submitted to the jury were that: "Defendant negligently failed and omitted to keep and maintain a careful and vigilant watch and lookout for persons traveling eastwardly across Grand Boulevard at said intersection; and negligently failed and omitted to sound a horn or give any warning to plaintiff of the approach and movement of said bus."
Appellant contends that no case for the jury was made on said issues, and for that reason the court erred in refusing to sustain defendant's motion for a directed verdict in its favor. This necessitates a review of the evidence most favorable to plaintiff's cause.
Plaintiff testified that before stepping into Grand Boulevard he looked toward the north and observed that the street was clear. He then looked toward the south and saw no traffic approaching from that direction. He also stated that at the time he stepped off the curb he could see east on Shenandoah for a quarter of a block, but observed no traffic approaching from the east. There was no bus standing at the intersection at the stop sign on the east side of Grand Boulevard. Plaintiff then proceeded to cross the street. He testified:
"I got past the southbound track in the middle of the northbound track * * * I looked south and saw no traffic coming that way * * * I was stepping past the east track * * about a foot and a half.
"Q. What did you see then? A. I saw this light coming at me; I looked up quick and I saw that big light across there with the words `Tower Grove'.
"Q. What was it you saw there? A. The busthe Public Service Bus * * * it was right on me, about four or five feet from me. No chance to get away from it, I kind of turned some to get away, but he slammed into me and knocked me down.
* * * * * *
"Q. Now, Mr. DeVoto, at that time, right before this bus struck you, did you hear any horn or warning? A. No."
Plaintiff further testified that at all times while crossing Grand Boulevard he was in the pedestrians' lane, which was marked off by two white lines. He further stated that he proceeded across the street at a brisk walk. He also stated that he was struck by the front end of the bus.
Oscar Stuesse, a news vendor, testified for plaintiff. He testified that on the occasion in question he was employed in selling newspapers at the intersection and that he saw the accident. He stated that the bus struck the plaintiff when the latter was in "the track from the south"; that plaintiff was knocked down by a westbound Tower Grove bus; and that he did not see the bus before the accident happened. The witness stated:
"I seen it the same timeI seen him the same time I seen the bus.
"Q. You looked up and the bus struck Mr. DeVoto? A. Yes.
* * * * * *
*357 "Q. I say, did you see the bus strike Mr. DeVoto? A. Yes.
"Q. You are sure the bus struck him? A. Yes."
The witness further testified that the bus was traveling "a little faster than a man walks".
Plaintiff testified that visibility at the intersection was good. There are street lights and a number of electric signs on all four corners. The intersection is in a business area, and three doors from the southeast corner is a motion picture theatre with a marquee which was lighted at the time. Plaintiff's evidence was that the area was "as light as day".
Richard Eckstrand, a police officer, testified that he arrived at the scene of the accident shortly after it occurred and saw Mr. DeVoto lying in the northbound streetcar tracks. The officer's report was read in evidence without objection. It stated: "Louis Praprotnik stated that he did not see the injured man before or after the accident until he made his usual bus stop to load and unload passengers on the west side of Grand at Shenandoah when some unknown person informed him that the bus he was operating just struck a man on Grand Avenue."
Frank Sirota, a police officer, testified that when he got to the scene of the accident he saw a man lying in the northbound streetcar tracks and in the pedestrians' lane. He stated: "I talked to the bus driver and I asked him about it, and he said he was not aware of the fact that he had an accident, he said he didn't notice it until some person came up and told him about it."
Joseph P. Sorensen, a passenger on the bus, testified that the bus came to a stop before entering Grand Boulevard, then proceeded diagonally across the intersection to the regular stopping place west of Grand Boulevard. He further stated that as the operator of the bus opened the door of the bus to admit passengers someone came running across the street shouting to the bus driver that he had had an accident.
Charles W. Moore, a passenger on the bus, testified that the speed of the bus as it crossed Grand Boulevard was five or six miles per hour. He further testified that when the bus stopped on the west side of Grand Boulevard "there was some man came and told him (bus driver), `Driver, you hit a man crossing Grand'". He also stated that he saw Mr. DeVoto "lying down in the northbound streetcar rails, or somewhere near there". He further testified that the bus traveled southwestwardly across Grand Boulevard at about a fortyfive degree angle.
Louis F. Praprotnik, the bus operator, testified that when he arrived at the east side of the intersection he made a boulevard stop; that his bus was three or four feet north of the center line of Shenandoah Avenue when he made the boulevard stop; that the intersection was well lighted and the weather was clear; that after making the stop he proceeded across Grand Boulevard at about three to five miles per hour and that he did not see anyone walking eastwardly in the crosswalk between the southwest corner and the east side of Grand Boulevard at the time. The witness further testified that after he had driven the bus across Grand Boulevard and was stopped on the west side thereof a man came to the front door of the bus and informed him that he had just struck a man on Grand Boulevard. He stated that he thereafter saw Mr. DeVoto lying in Grand Boulevard between the northbound and southbound streetcar tracks. He stated that while driving across Grand Boulevard he did not sound the horn on the bus or give any warning; and that he did not see Mr. DeVoto on the street at that time.
There is no merit to the contention that plaintiff failed to make a case for the jury on the negligence submitted. There was evidence that plaintiff stepped off the west curb of Grand Boulevard and walked directly across the street under lighting conditions which were described as "light as day". Grand Boulevard at that point, according to the evidence, is fifty or fiftyfive feet from curb to curb. Plaintiff was past the center line of Grand Boulevard when he was struck, so that, according to his evidence, plaintiff walked over twentyfive feet in Grand Boulevard in plain sight *358 of the bus operator as the bus approached and entered the intersection. The bus driver admitted he did not see plaintiff at any time prior to the accident. His failure to see plaintiff under the facts and circumstances shown could reasonably be attributed to a breach of the bus driver's duty to keep and maintain a careful and vigilant watch and lookout for persons on the traveled portion of Grand Boulevard at such time. There was no warning sounded by defendant's driver at any time.
From the foregoing facts and circumstances a jury could reasonably infer that plaintiff's injuries resulted from the failure of defendant's bus driver to make observations for plaintiff's safety and to warn him of the approach of the bus. The court did not err in refusing to sustain defendant's motion to dismiss. O'Shea v. Pattison-McGrath Dental Supplies, Inc., 352 Mo. 855, 180 S.W.2d 19; Bongner v. Ziegenhein, 165 Mo.App. 328, 147 S.W.2d 182; Schinogle v. Baughman, Mo.App., 228 S. W. 897; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691.
Appellant assigns as error the giving of plaintiff's Instruction No. 1. Said instruction is as follows:
"The Court instructs the jury that if you find from the evidence that on the 25th day of March, 1948, at about 8:45 P.M. of that day, plaintiff was a pedestrian crossing Grand Boulevard from west to east at its intersection, as mentioned in the evidence, with Shenandoah Avenue, walking in a lane across said Grand Boulevard marked for pedestrians' use; and if you further find from the evidence, that defendant at said time was operating the motor bus mentioned in the evidence over and across said Grand Boulevard and said intersection and could, by keeping a lookout ahead of said bus, if so, for pedestrians crossing said street and said intersection, have seen plaintiff in said lane, if so, and crossing said street, if so, but negligently failed to do so, and negligently failed to warn plaintiff of the approach of said bus, if so, by sounding a horn, bell or other device for signaling, and that by and from said negligence, (if you find defendant guilty of negligence in the above particulars) defendant caused, suffered and permitted said bus, if so, to run against and strike plaintiff and injure him, and that plaintiff would not have been injured, if he was, if defendant had kept a lookout ahead of said bus, if you find it did not, and if defendant had given a warning to plaintiff of the approach of said bus, if you find it did so fail, then your verdict will be for the plaintiff and against the defendant."
The basis of appellant's complaint against the foregoing instruction is that it is incomplete in that it does not require a sufficient finding of facts giving rise to a duty to act on the part of the bus driver, the failure to perform which would constitute negligence. In support of this contention appellant cites and relies upon the principles announced in Stakelback v. Neff, Mo.App., 13 S.W.2d 575, and applied by this court in the former appeal in the instant case. DeVoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66. Instructions in both said cases were held erroneous because they did not confine the defendant's duty to take effective measures to avert the plaintiff's injury to such time as due care would lead defendant to believe there was apparent danger to the plaintiff from a collision unless such steps were taken. Appellant says that under said authorities the instruction under review was erroneous because it did not require a finding that the bus driver, by maintaining a proper lookout, could have seen plaintiff in a position where there was danger of his being struck unless a warning was given, and that such warning could have been given in time to have avoided the collision.
The negligence submitted was one compound negligent act, i. e., failure to make observations for plaintiff's safety, and to warn him of the apparent danger of collision. The duty to maintain a careful lookout was a continuous one, while the duty to warn could only arise when the driver of the bus, in the exercise of due care, became aware, either actually or constructively, *359 that a collision would likely occur unless a warning was given. Did Instruction No. 1 place a greater duty upon the bus driver than that required of him by law?
It will be observed that the instruction authorized a verdict for plaintiff only if the bus driver negligently failed to keep a lookout and negligently failed to warn when plaintiff was crossing the street within the intersection and the bus was being operated across said intersection. The jury was not authorized to find that the duty to act arose prior to the entry of the defendant's vehicle into the intersection, as was the situation in the Stakelback case, supra, and in the case at bar on the former appeal. The duty to act was confined within the narrow limits of the intersection and a verdict was authorized only if there was a negligent failure to act. A negligent failure to maintain a proper lookout, and to warn, would be understood by the average person to mean a breach by the bus driver of his continuous lookout duty, and a failure to warn when the situation demanded it, i. e., when there was apparent danger of collision. Thus understood, it cannot be said that there was misdirection in the instruction. If defendant thought there was any confusion or lack of clarity in the submission of said instruction, it should have requested a clarifying instruction.
Nor is the instruction defective for failure to require a proper finding as to proximate causation, as contended by appellant. The instruction authorized a verdict for plaintiff only if the jury found that by reason of the negligence "defendant caused, suffered, and permitted said bus * * * to run against and strike plaintiff and injure him, and that plaintiff would not have been injured * * * if defendant had kept a lookout ahead of said bus * * * and if defendant had given a warning to plaintiff of the approach of said bus * * *."
In a personal injury suit the words "direct and proximate cause" are unnecessary in an instruction where the language used, in plain and logical intendments, requires the jury to find causal connection between the negligence of the defendant and the plaintiff's injury. Stevens v. Dickey, Mo.App., 222 S.W.2d 563; Cornovski v. St. Louis Transit Co., 207 Mo. 263, 106 S.W. 51; Smart v. Raymond, Mo.App., 142 S.W.2d 100; Wheeler v. Breeding, Mo. App., 109 S.W.2d 1237.
The Court did not err in giving Instruction No. 1.
Lastly, it is urged that the verdict of the jury is so grossly excessive as to indicate passion, prejudice and bias on the part of the jury.
Plaintiff was seventy years of age at the time he received his injuries. He was unemployed at the time, and was receiving social security benefits from the Federal Government. He was unmarried, and had no dependents. Plaintiff was taken to the City Hospital from the scene of the accident. He was unconscious at the time. He remained at the hospital for four days. Thereafter, plaintiff was confined to his home for about six months.
From the hospital records and the testimony of plaintiff's doctor, it appears that plaintiff sustained the following injuries: (1) abrasions and contusions of his extremities; (2) a small laceration of the scalp; (3) fractures of two fingers of the left hand; (4) fracture of the lower portion of the right leg; and (5) derangement of the left knee joint caused by a tearing or crushing of the internal ligament of the knee joint. The abrasions and contusions healed normally. The same is true with respect to the fracture of the right leg and the fingers on the left hand. At the trial, plaintiff testified that he was then suffering no ill effects from said fractures except a little stiffness in the fingers and, occasionally, upon change in the weather, had pain in the right leg. The right leg was in a cast for about seven weeks and plaintiff was forced to use crutches for about five months. Thereafter, for some time, plaintiff was able to get about with the aid of two canes. At the time of the trial plaintiff was using a cane to assist him in walking. This was made necessary by reason of the injury to the left knee which *360 rendered said knee unstable. Plaintiff's doctor testified that the injury to the left knee was permanent. Plaintiff testified that he had no control over the left leg by reason of the knee injury, and that he suffered constant pain in the left leg and knee.
Considering the nature and extent of plaintiff's injuries, we do not feel warranted in disturbing the verdict. The amount allowed by the jury was not manifestly excessive.
Finding no error in the record, the judgment appealed from is affirmed.
BENNICK, P. J., and LADRIERE, J., concur.