RAYMOND F. BARNES, Appellant, v. CLINT VANDERGRIFT, Respondent, No. 44286—269 S. W. (2d) 13.

Court en Banc, June 14, 1954.

*Stemmons & Stemmons* and *J. A. Appelquist* for appellant.

*Sater & Monroe* for respondent.

HYDE, J.—Action for damages to plaintiff's automobile in collision with defendant's automobile. Plaintiff obtained verdict and judgment, which the trial court set aside and ordered judgment entered for defendant. Plaintiff appealed to the Springfield Court of Appeals which reversed the judgment and directed that judgment be entered for plaintiff. (Barnes v. Vandergrift, 263 S. W. (2d) 735; for previous appeal see 238 S. W. (2d) 439.) We transferred the case because the Court of Appeals did not pass on all the questions raised.

Defendant contends that plaintiff failed to make a jury case because he claims that plaintiff testified to a state of facts making it an impossibility for the accident to have happened as he described; and apparently this was the view of the trial court. Defendant offered no evidence. Plaintiff was driving north on the east side of Highway EE in Mt. Vernon. As he approached the intersection with South Street (one block south of the public square) defendant's car came from a filling station (on the southwest corner of the intersection) across the intersection at an angle to the northeast and collided with plaintiff's car. Plaintiff testified that as he approached this filling station defendant began to move his car "antegoggling" into the highway "without looking either direction." He said that when he first noticed this car begin to move he was "right at the edge of this filling station property, approximately 25 or 30 feet up the street." He said when he saw defendant's car in motion he honked his horn and slacked up on his speed; and that when defendant came into his lane he swerved to the right and at that time had his brakes on. Plaintiff estimated his speed at 28 miles per hour (before he saw defendant's car in motion) and said that defendant "was probably going five miles an hour" across the intersection. Defendant's right front fender ▮ and plaintiff's left front fender came in contact in the east lane of the highway.

■ Defendant's contention as to impossibility is based on the following cross-examination:

"Q. Where does your visibility of this place show up? A. Approximately 30 feet up the highway. Q. You say that the filling station isn't visible more than 30 feet? Now what speed were you driving down the highway? A. 28 miles an hour, sir. * * * Q. *When you was in 28 or 25 feet of that intersection* where was the defendant's car? A. He was sitting on the east side of those pumps. Q. On the east side of the pumps. And how many feet was he then from the southwest side of EE street? A. 15 feet as I said. Q. So when you saw him, driving at 28 miles an hour *25 or 30 feet south of where this accident occurred,* he was still 15 feet west of the edge of the highway? A. That is my first vision of him. * * * Q. I say how many feet was it west of where the impact took place? A. Approximately when I first seen it from the place where he was sitting to the impact was around 20 or 25 feet. Q. When you first saw him he was 20 to 25 feet from where the impact took place? A. Yes. * * * Q. But you do know that a man driving at four or five miles an hour going the same distance couldn't make the center of the street as quick as a man driving 25 or 28 miles an hour the like distance, don't you? A. It sounds that way."

However, later in this same cross-examination, plaintiff testified further, as follows:

"Q. Now while he was driving that 30 feet at 4 miles per hour or 5, you were traveling,-you say, 20 to 30 feet at 25 miles per hour? A. I beg your pardon. I was 30 feet up the highway. Q. You was 30 feet up the highway and that was 30 feet south of the intersection? A. No, sir, I beg your pardon. Q. Where were you then? A. I was 30 feet up the highway when I first came in vision of this filling station. Q. And he was at the filling station then? A. That's right. Q. And you saw then that he was moving? A. He was in motion. Q. So after all you was 30 feet back there. He wasn't standing there when you first saw him? A. No, sir, his car was in motion."

Considering plaintiff's testimony as a whole (most favorably to plaintiff), we do not think it conclusively must be construed as meaning that plaintiff was only 25 feet from the place of the collision when defendant began to move 25 feet from the place of collision. In the first place, the italicised portions of the two questions concerning distance state two different distances. One is 25 or 30 feet south of where the accident occurred and the other is 25 or 28 feet of the intersection. Since the collision took place in the northeast corner of the intersection, the latter distance would be longer by about the width of the intersecting street than the former. There was evidence that this street was 22 feet wide. Moreover, plaintiff did not continue to travel at 28 miles per hour because he immediately applied his brakes. Furthermore, it must be considered that these were

both double questions and plaintiff's answers did not refer to where his own car was but instead stated where he first saw defendant's car. Moreover, in the latter part of his cross-examination, when defendant's attorney tried to get him to say that both cars went the same distance at different speeds, plaintiff corrected him saying that he was 30 feet up the highway when he "first came in vision of this filling station." That is in harmony with what he said, before he was asked the two double questions, that the visibility of the filling station was, "approximately 30 feet up the highway." Thus this testimony was indefinite as to the distance and the jury could reasonably have found that plaintiff meant he was 30 feet south of the filling station when he first saw defendant's car in motion. This construction does not make the time and distance elements impossible.

 Plaintiff also had an eyewitness to the collision who was 20 yards north of the intersection. He said: "Mr. Barnes was coming north and Mr. Vandergrift pulled off the runway and Mr. Barnes swerved over, honked and applied his brakes and Vandergrift kept moving into the east lane." He said plaintiff was driving in the east lane of the highway; that the impact occurred in the east lane; that plaintiff's car skidded when he applied his brakes; and that he noticed the tire marks. He also said plaintiff was about half a block up the highway (135 feet south of where the collision occurred) when he first saw him, going about 25 miles per hour; and, thereafter, he first saw defendant as he was pulling off the runway at the station. He estimated that plaintiff was going eight to ten miles per hour when the impact occurred and that defendant was going about four miles per hour. The broken glass and debris was all found on the east side of the highway.

Defendant relies mainly on Bauer v. Wood, 236 Mo. App. 266, 154 S. W. (2d) 356. (Citing also Davis v. McClanahan, (Mo. App.), 262 S. W. (2d) 65; Freed v. Mason, (Mo. App.), 137 S. W. (2d) 673; Ellis v. Wolfe-Shoemaker Motor Co., (Mo. App.), 55 S. W. (2d) 309; McCoy v. Home Oil and Gas Co., (Mo. App.), 48 S. W. (2d) 113; Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S. W. 177.) However, Bauer v. Wood, supra, was a humanitarian negligence case (as were most of the others cited) and plaintiff's evidence therein failed to show a basic element of the humanitarian rule, a position of imminent peril. Instead, plaintiff's evidence demonstrated there could not have been a position of imminent peril under the facts stated and so the Court held there was no causal connection between the negligence alleged and the collision. Since the duty to act under the humanitarian rule, does not arise until there is a position of imminent peril, it is essential that the speed and relative positions of vehicles involved be shown in order to prove negligence in the performance of such duty. A primary negligence case is different because recovery can be based on antecedent negligence; that is, negligence arising prior in time to that which could be humanitarian negligence. The negligence sub-

mitted in this case was driving from a private driveway into the lane of the highway on which plaintiff was traveling without stopping and without giving a warning when defendant saw or by exercising the highest degree of care could have seen plaintiff's car traveling north on the highway. This covered failure to keep a lookout, failure to warn, and failure to yield the right of way. (See Sec. 304.020(7) RSMo. V.A.M.S. which was in force at the time of this collision; See also Wheeler v. Breeding, (Mo. App.), 109 S. W. (2d) 1237.) If defendant by a proper lookout could have seen plaintiff approaching on the highway close to the filling station, as plaintiff's evidence indicates, then defendant was negligent in failing to see him and even more so in driving on to the highway without observing his approach as plaintiff's evidence also indicates. The jury could reasonably find that such negligence was the proximate cause of the collision. These issues together with issues of plaintiff's contributory negligence were submitted to the jury and its finding was for plaintiff. We hold these were all issues for the jury; that they were supported by substantial evidence; and that defendant was not entitled to a directed verdict.

█ Defendant also claims that Instruction No. 1 (authorizing a verdict for plaintiff) was erroneous. Defendant says it does not hypothesize facts showing liability of defendant; that it submits failure to sound a warning when plaintiff saw defendant's car and had all the knowledge a warning could convey, and that it is inconsistent, confusing and misleading, apparently █ because it submits applying of brakes and skidding of wheels by plaintiff and allows a finding of defendant's negligence without submitting the relative position of the cars. We think these criticisms are without merit. After requiring a finding that plaintiff was driving on the east side of the highway at about 28 miles per hour the instruction required the following finding as to defendant's acts: ''That as plaintiff proceeded north, defendant drove his automobile from the runway or private driveway of said filling station in a northeasterly direction without stopping, and without giving a warning and into the intersection and on to the east lane of Highway EE at a time when defendant saw or by exercising highest degree of care should have seen that plaintiff's automobile was traveling northward on said Highway EE and plaintiff's automobile was in position of danger of being struck by defendant's automobile, and did hit the left front fender of plaintiff's car.'' The instruction further required a finding as to plaintiff's action (keeping a lookout, honking, swerving, applying brakes); that defendant was negligent and that such negligence directly caused damage. We hold this was a sufficient hypothesization of facts to show negligence and liability of defendant. If defendant considered any further hypothesization of the situation necessary, he should have offered a clarifying or amplifying instruction. (Hooper v. Conrad, 364 Mo. 176, 260 S. W. (2d) 496.) This is also true of defendant's contention that the instruction was con-

fusing and misleading. We think it was clear as to the essential facts of liability and there was no reason to encumber it with details as to the relative position of the cars. As to the matter of sounding a warning it was certainly not error to include that because Sec. 304.020(7) required that when vehicles shall be driven from private property onto a highway, in a municipality, "the operator or driver of such a vehicle shall give warning of his intention to proceed into the line of moving vehicles by sounding his horn or whistle." We hold this instruction was not erroneous in any of the respects alleged.

The judgment entered for defendant is reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon for plaintiff.

*Hollingsworth, Dalton, Leedy, JJ., Conkling, C.J.,* and *Bennick* and *Cave,* Special Judges, concur.