Roy D. DOUGLAS, Plaintiff-Respondent,

v.

Jimmie WHITLEDGE, Defendant-Appellant.

No. 7518.

Springfield Court of Appeals.

Missouri.

April 30, 1957.

Not to be reported in State Reports.

C. A. Powell, Dexter, for appellant.
Claude Arnold, Dexter, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a verdict and judgment of the Circuit Court of Stoddard County, Missouri, in favor of plaintiff and against defendant on plaintiff's petition for $200 damages to his automobile, and in favor of plaintiff on defendant's counterclaim wherein he sought $1,000 damages to his car.

Plaintiff's petition is based upon both primary and humanitarian negligence. The cause was submitted to the jury only on primary negligence. As to primary negligence, the petition alleged that on the 26th day of February, about 7:25 A.M., plaintiff was driving north on Mulberry Street in Dexter, in his 1948 Nash Sedan; that when he arrived at the intersection of Mulberry Street with Stanley Street, (which runs east and west), his car was violently struck in the middle portion by defendant's 1954 Mercury, two-door sedan, coming from the east on Stanley Street.

The acts of primary negligence relied on were: That defendant failed to use

the highest degree of care in that he failed to stop at said intersection; that he failed to keep a proper outlook for plaintiff and other persons on said street; that he failed to keep a proper control of his automobile; and, that he drove at a high and excessive rate of speed.

Defendant filed answer and counterclaim. The answer admitted that defendant was driving in a westerly direction on Stanley Street and the collision with plaintiff's car, but, denied all other allegations in the petition. It pleaded that the petition failed to state a claim and that if plaintiff sustained any damages it was due to his own negligence and carelessness directly and proximately contributing thereto.

In the counterclaim defendant asked for $1,000 damages to his car because of the negligence of the plaintiff. The acts of negligence relied on were (1) in failing to keep a lookout for and to see defendant's automobile which was approaching from plaintiff's right; (2) in failing to give the right-of-way to defendant's automobile approaching from plaintiff's right, since both automobiles were approaching and entering such intersection at approximately the same time; (3) in failing to stop, slow down or swerve his automobile to avoid the collision, and, (4) in failing to have his automobile under control.

The reply was a general denial.

In our opinion we will refer to appellant as defendant and respondent as plaintiff, the position they occupied in the lower court.

The evidence shows that Mulberry is a blacktop street, 20 feet wide, running in a north-south direction and Stanley is a blacktop street, 17 feet wide, running east and west, intersecting Mulberry Street.

Plaintiff testified that on the morning of February 26, 1955, about 7:25 o'clock, he was driving his car north on Mulberry Street, approaching the intersection with Stanley Street; that at the time he was driving in the east lane of traffic at a speed of between 28 and 30 miles per hour; that he did not slow down as he entered the intersection. He gave this testimony:

"Q. Tell what you did, if anything, as you approached the intersection. A. I looked both right and left at the intersection when I entered it, and saw nobody coming.

"Q. Did you then enter the intersection? A. Yes, sir.

"Q. When did you see him? A. When he was within about two foot of me."

Plaintiff testified that the impact between the cars was about two feet south of the north line of Stanley Street and about two feet east of the east line of Mulberry Street; that it happened about the middle of the east line of traffic on Mulberry Street; that the front end of his car, at the time of the collision, was about 8 feet north of the north line of Stanley Street; that he observed skid marks after the collision, made by defendant's car, which were 12 feet long from point of impact; that defendant's car was in the north lane of traffic on Stanley Street. He testified:

"Q. All right. You said you first observed his car when he was about two feet from you, what did you do, if you recall, when you saw that situation? A. I didn't have time to do anything."

Plaintiff stated that after the collision his car came to rest 27 steps north on Mulberry Street, headed west; that there were no other cars traveling on either street at the time of the collision; that it was cloudy but the pavement was dry.

On cross-examination this testimony was given:

"Q. When did you look? A. When I entered the intersection.

"Q. But you didn't turn any before you were hit, did you? A. No, sir.

"Q. Did you ever swerve your car in any way? A. No, sir.

"Q. Did you ever put your brakes on? A. No, sir, I didn't have time.

"Q. Yes. Now, when did you look to the right? A. When I entered the intersection.

"Q. Did you look back here (indicating)? A. I couldn't look back there.

"Q. Why not? A. Because I had an obstruction in my way.

"Q. What was it? A. Some bushes there in Baliff's yard.

"Q. What part of your car was in the intersection when you looked to the right? A. It wasn't in the intersection when I looked.

"Q. None of it was? A. No, sir.

"Q. Was the front end up even with this concrete walk? A. Yes."

The evidence showed there were concrete walks on each side of both streets, about four feet wide. Plaintiff gave this testimony:

"Q. Now, where were you sitting, were you even with the south side or were you farther to the south? A. I was at the north side of the walk, even with the north side of the walk, when I looked for a clear right of way.

"Q. You mean where you were was even with the north side of the walk, is that right? A. I would call that at the entrance of the intersection."

He testified the seat of the car was about four feet from the front end. He gave this testimony:

"Q. When you looked to the right you could see clear down the street, is that true? A. No, sir; I couldn't see all the way down the street.

"Q. Just tell us what you could see down there, how far you could see. A. Well, there is a tree that would stop a man's obstruction, on the right. * * * Sitting in the corner."

He stated when he looked he had not got past this tree. He testified he was sitting about four feet or so south of the sidewalk when he looked and he was looking at an angle across the street. He testified:

"Q. Now, how long did you look to the right, just a glance to the right and looked ahead again? A. I looked to the right and looked to the left.

"Q. And you didn't see anybody at any time? A. No, sir."

He stated after he looked to the right he traveled about 15 feet before the collision; that he was still in the middle of his lane of traffic and defendant was in his middle lane of traffic; that he saw defendant's car out of the corner of his eye and that attracted his attention when he looked to the right. He stated the defendant's car hit his car near the front door on the right side; that his car went on north on Mulberry Street and defendant's car headed north on Mulberry Street. Plaintiff testified he did not know the speed of defendant's car at the time of the collision.

We think the testimony is undisputed that at the southeast corner of this intersection there were bushes, without foliage, along the concrete sidewalk from the corner east on Stanley and south on Mulberry.

Defendant testified that as he approached Mulberry Street, driving west he saw plaintiff's car coming north on Mulberry when he was in about 30 or 35 feet from the intersection, and, at the time was driving about 25 to 30 miles an hour; that when he saw plaintiff was not going to slow down or stop, he put on his brakes; that his car made skid marks from point of impact back about three steps.

Three photographs were offered in evidence showing damage to plaintiff's car. The bent portions of the car on the right side started at the edge of the front fender and extended back to and damaging the back fender. Both front and back doors were mashed in.

Defendant testified that the grill, hood, both front fenders, headlights, bumper, radiator, fan, and fan belt on his car were damaged. There were no stop signs on either street.

Defendant assigns as error the trial court's failure to sustain his motion for a directed verdict at the close of all the evidence and for judgment on plaintiff's petition in accordance with defendant's motion for a directed verdict at the close of all the evidence, because plaintiff was guilty of contributory negligence as a matter of law.

Where a litigant's own evidence establishes his contributory negligence, the issue is for the court. Wilson v. Toliver, Mo. Sup., 285 S.W.2d 575, 580.

Section 304.021 RSMo Cum.Supp.(1955). V.A.M.S. reads:

"1. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, provided however, there is no form of traffic control at such intersection.

"2. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right. * * *"

In Weis v. Melvin, Mo.Sup., 219 S.W.2d 310, 311, the law is stated:

"It is the duty of motorists to maintain a careful and vigilant lookout ahead and laterally ahead." (Citing much authority.)

Then the court stated: "Other things being equal, the motorist on the left is to yield the right-of-way to the motorist on the right at highway and street intersections. * * * As defendant approached and as she proceeded across the intersection the law placed upon her a duty to watch for traffic on her right, the direction from which she especially would expect

traffic as she approached the center line of 63rd street. * * *" Folluo v. Gray, Mo.App., 256 S.W.2d 273, 276.

■ The law is well settled that where a motorist has a duty to look, a failure to see what is plainly visible, constitutes negligence as a matter of law. Roux v. Pettus, Mo.App., 293 S.W.2d 144; Fuzzell v. Williams, Mo.App., 288 S.W.2d 372.

■ Contributory negligence to defeat recovery must be such negligence as contributes to cause the occurrence of the accident. Fuzzell v. Williams, supra.

In Wilson v. Toliver, supra, 285 S.W.2d on page 582, the opinion states:

"Many motorists seemingly have the idea that the mere fact they reach and enter an intersection ahead of a motorist on an intersecting highway gives them the right to proceed across the intersection regardless of the conditions confronting them and relieves them of all caution. This is not the law. Under § 304.010 motorists are required to exercise the highest degree of care at all times and places on the highways of this state. Gude v. Weick Bros. Undertaking Co., 322 Mo. 788, 783, 16 S.W.2d 59, 60; La Banca v. Pundmann, Mo., 147 S.W.2d 466(1)."

■ In the instant case as plaintiff approached and entered the intersection, the law placed upon him a duty to watch for traffic on his right, the direction from which he especially would expect traffic. Folluo v. Gray, supra. Likewise, the law placed upon him the duty not only to look to his right for traffic as he approached the intersection but to see what was plainly visible, and, if he failed to do so, he was negligent as a matter of law. Roux v. Pettus, supra.

■ Plaintiff's testimony shows that at the time he approached the intersection of Mulberry and Stanley Streets he did not look to his right until he was at the intersection or possibly even with the sidewalk

on the south side of Stanley Street, which was within a few feet of the intersection. He testified he looked to the right and then to the left; that he saw no traffic approaching from the right when defendant's car must have been within plain view and a short distance from the intersection. It seems to be plaintiff's belief that because he reached the intersection first that fact alone gave him a right to proceed across regardless of the conditions confronting him and although there was immediate danger of a collision with defendant's car. He was under a legal obligation to exercise the highest degree of care in proceeding to cross the highway. We think he wholly failed to exercise such care. He says he approached the intersection driving at a speed af 28 to 30 miles an hour; that he did not look until he was at the intersection, which was only 8½ feet from the lane of traffic on Stanley Street where defendant was approaching the intersection. Although it was his duty to look for traffic approaching from the right, he did not do so until it was too late to prevent the collision. He says that his view was obstructed so that he could not see traffic approaching from his right. The conclusion is inescapable, from plaintiff's testimony, that he moved into the intersection without having any real idea of the position of defendant's approaching vehicle. He looked but he looked negligently. He did not look again until defendant's car was within two feet of him. Although his view was obstructed, as he approached the intersection, he took no caution to find out if there was any danger in entering and crossing the street. We find that plaintiff's evidence shows him to have been guilty of contributory negligence as a matter of law.

Having found that litigant's own evidence establishes his contributory negligence, the issue is for the court and not for the jury.

It is unnecessary to pass upon plaintiff's instruction P-1 and instruction No. 8, complained of under points II and III, for the reason that plaintiff's case should not have been submitted to the jury. Wilson v. Toliver, supra, 285 S.W.2d loc. cit. 580.

Under allegation of error No. IV, as to action on defendant's counterclaim, it is contended that the court erred in giving instruction No. 8 in that this was a verdict directing instruction in favor of plaintiff on plaintiff's petition without requiring the jury to find that the defendant was negligent, for the reason that the jury could not have consistently returned a verdict for defendant on the counterclaim and on the petition for plaintiff; that the instruction was confusing to the jury.

To sustain this contention defendant cites Blackman v. Botsch, Mo.App., 281 S.W.2d 532, 535. This is an opinion written by the Springfield Court of Appeals. In the trial the jury returned a verdict for plaintiff on the petition and for defendant on the counterclaim. We held that a verdict must be responsive to all of the issues and this includes those raised by the counterclaim; that the verdict on the counterclaim was inconsistent with the verdict on the petition and such verdicts were self-destroying.

Had the jury in the instant case returned a verdict for both plaintiff and the defendant, we would have had the same situation for such a verdict would not have been responsive to the pleadings and would have been inconsistent. But such is not the case here presented.

Smoot v. Riebel, Mo.App., 274 S.W. 522, cited by defendant, likewise, was a case where the verdict returned by the jury was for the plaintiff on the petition and for defendant on the counterclaim. The court held that the verdicts were inconsistent under the instruction, which was a proper holding. But it in no way supports defendant's contention in the instant case.

Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, 395, is cited by defendant in

support of his contention. The instruction in this case confused primary and humanitarian negligence. In fact, it required the the jury to find that the defendant was free from both primary and humanitarian negligence, which is clearly reversible error. The court said that the requirement of antecedent primary negligence defeats rather than aids the plaintiff on the humanitarian theory; that the mingling of primary and humanitarian negligence and not covering the whole situation as to either, only tended to further confuse the jury as to the issues they were to try. This clearly is no authority on the facts in the instant case.

Instruction No. 8 told the jury that if they found and believed from the preponderance or greater weight of the evidence that plaintiff's motor vehicle entered the intersection ahead of and before defendant's car entered said intersection, and if the jury found that plaintiff in entering and proceeding across said intersection exercised such care as a very careful and prudent person would have exercised under the same or similar circumstances, that the plaintiff had the right-of-way over the defendant's automobile, even though defendant's car was at the time approaching the intersection from plaintiff's right. It then told the jury that if they found from the evidence that defendant's automobile collided with plaintiff's car as above instructed and that as a direct result of said collision plaintiff's car was damaged their verdict should be for the plaintiff and against the defendant.

It was error to have submitted this instruction under plaintiff's evidence for the reason that plaintiff's evidence shows contributory negligence as a matter of law.

This instruction was patterned after an instruction approved by this court in Jameson v. Fox, Mo.App., 269 S.W.2d 140. We find that even if the instruction was erroneous it could not have prejudiced the right of defendant on his counterclaim. Plaintiff's theory of the case was entirely inconsistent with defendant's theory and,

if under the pleadings the jury had found for defendant on his counterclaim, it could not have found for plaintiff under this instruction.

Defendant's allegation of error No. V complains that the court erred in refusing to give defendant's instruction No. 5 on contributory negligence, which informed the jury that if it found that plaintiff failed to keep a lookout for defendant's automobile or failed to stop, slow down, or swerve his automobile, and that such failure caused or contributed to cause the collision, then its verdict should be for defendant on plaintiff's petition.

Under our holdings in this case that plaintiff was guilty of contributory negligence as a matter of law, it is unnecessary to pass on this error, which only goes to plaintiff's right of recovery.

Under allegation of error numbered VI, defendant contends that the trial court erred in refusing defendant's instruction D-7 as amended, his main instruction on his counterclaim, because it properly told the jury that if the collision was caused by the plaintiff's failure to keep a lookout for defendant's automobile and for failure to stop, slow down or swerve his automobile, then defendant was entitled to recover on his counterclaim, since no other similar instruction was given.

Instruction D-7, as amended, reads: "The Court instructs the jury that if you find and believe that at the time of the automobile collision mentioned in the evidence the plaintiff failed to keep a lookout for and to see the defendant's automobile approaching from the plaintiff's right, and failed to stop or slow down or swerve his automobile so as to avoid the collision, and that such failure, if any, on the part of the plaintiff directly caused the collision mentioned in the evidence, and that the defendant's automobile was damaged in said collision, then your verdict will be against the plaintiff and for the defendant on the defendant's counterclaim."

Under the law the duty rested upon defendant's attorney to aid the court in giving the proper instruction needed for the jury to arrive at a correct verdict on defendant's counterclaim. Norman v. Horton, 344 Mo. 290, 126 S.W.2d 187, 190(6), 125 A.L.R. 531; Dorman v. East St. Louis Ry. Co., 335 Mo. 1082, 75 S.W.2d 854.

It was not incumbent on the court to instruct the jury from the defendant's standpoint unless properly requested to do so. Jenkins v. Clopton, 141 Mo.App. 74, 121 S.W. 759, 766; Sowders v. St. Louis & S. F. Railway Co., 127 Mo.App. 119, 104 S.W. 1123.

In Salzman v. Athletic Tea Co., Mo. App., 236 S.W. 907, 908, (2–3), the court stated: "The court is not bound to instruct in civil cases where no instructions are requested, and the court owes no duty to either party to give instructions either on its own *iniative,* or in lieu of those refused. Morgan v. Mulhall, 214 Mo. 451, 114 S.W. 4.

"But where either party requests an instruction within the issues, in proper form, correctly presenting its theory of the case, supported by the pleadings and the evidence, and where such theory is not covered by some other instruction given, then it is reversible error to refuse to give it. Kinlen v. Metropolitan St. Railroad Co., 216 Mo. 145, loc. cit. 163, 115 S.W. 523; Harris v. Terminal Railroad Association, 203 Mo.App. 324, 218 S.W. 686."

In Whaley v. Milton Const. & Supply Co., Mo.App., 241 S.W.2d 23, 28(9), the law was stated: "There must be a request for an instruction to place on the court a duty of giving such instruction. Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 132 S.W.2d 686." Silberman v. Hicks, Mo.App., 231 S.W.2d 283, 284(8).

It is the function of a verdict-directing instruction to inform the jury of the essential facts they are to decide. Randall v. Steelman, Mo.App., 294 S.W.2d 588, 593

(3–4); Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496; Daggs v. Patsos, Mo. App., 260 S.W.2d 794.

In Le Grand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706, 711, this rule of law is stated:

"* * * It may be said to be generally true that, 'It is the settled rule that an instruction purporting to cover the whole case and authorize a verdict should require the finding of *all facts necessary to* sustain the verdict', or that such instructions 'must require the finding of *all essential fact issues* necessary to establish the legal propositions upon which the right to it is based.' * * *

"* * * It is merely a question of what is 'essential' or 'necessary' in any given case. * * *"

The Supreme Court en banc in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500(2) stated this law:

"Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict. In like manner, verdict-directing instructions in behalf of the defendant should recite on their face or by reference to other instructions any essential fact or facts shown or not shown which will defeat plaintiff's right of recovery. Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently

hypothesized in any instruction, he should offer a clarifying or amplifying instruction."

In the instant case there was a divergence in the evidence of the parties as to the essential facts which occurred to bring about defendant's injuries and damages. Consequently, defendant's verdict-directing instruction D-7 which the court refused and of which action error is complained of, did not sufficiently hypothesize the facts essential to guide the jury in determining the ultimate issue of the negligence complained of under the circumstances shown in evidence.

Under the evidence there was a conflict as to the testimony of plaintiff and the defendant in the following particulars. Plaintiff testified that as he approached the intersection of Mulberry and Stanley Streets, he could not see the traffic approaching from his right on Stanley Street because of obstructions, "some bushes there in Baliff's yard" on the southeast corner of the intersection and because of a tree in the corner of the yard at said intersection. Defendant testified that as he approached the intersection of said streets from the east on Stanley Street, he saw plaintiff's car approaching the intersection from the south on Mulberry Street when he was within 25 or 30 feet from such intersection; that there were no leaves on the bushes and they could see through such bushes. Plaintiff testified that the point of impact of the cars took place in the intersection about two feet south of the north line of Stanley Street and two feet east of the east line of Mulberry Street. Defendant testified that plaintiff's car was four or five feet west of the east line of Mulberry Street and near the center line of traffic on said street. This left a dispute as to essential facts as to when plaintiff, in the exercise of the highest degree of care, could have discovered defendant's west bound automobile and the place and location of defendant's car when it could have been seen by plaintiff.

Following the law as declared by the Supreme Court en banc in Hooper v. Conrad, supra, "where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict", we find against defendant on this assignment of error. See M.L.R., Vol. 19 (1954), p. 356; Randall v. Steelman, supra; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756, 761(4).

The positions of plaintiff's and defendant's cars and the point of collision were disputed facts and the facts in support of defendant's case should have been hypothesized. Daggs v. Patsos, supra.

It is unnecessary to pass upon defendant's allegation of error No. VII, contending that the trial court erred in refusing defendant's instruction D-3. This instruction is a correct statement of the law under section 304.021 RSMo Cum.Supp.(1955), V. A.M.S. It is not a verdict-directing instruction, and, therefore, the jury could not have returned a verdict for the defendant upon this instruction because it fails to sufficiently hypothecate facts from which the jury could have returned a verdict on defendant's counterclaim.

It is the order and judgment of this court that the cause be reversed and remanded with directions that judgment for plaintiff on his petition and against defendant be set aside and judgment entered for defendant on plaintiff's petition; that judgment in favor of plaintiff and against defendant on defendant's counterclaim be, and the same is, affirmed.

STONE, J., concurs in separate opinion.

RUARK, J., concurs in concurring opinion.

STONE, Judge (concurring in result).

■ We concur in what has been written in the principal opinion concerning plaintiff's contributory negligence as a matter of law, and also in the conclusion that the judgment for plaintiff on defendant's counterclaim should be affirmed. These comments pertain primarily to defendant's insistence that he should have a new trial on his counterclaim for refusal of instruction D-7, his principal verdict-directing instruction on the counterclaim.

■ *Assuming* (for the purposes of this discussion) that *defendant* was *not* contributorily negligent as a matter of law and that the jury should have been instructed as to the issues on his counterclaim, we agree that nevertheless the duty rested upon his counsel, not upon the court, to formulate an instruction (or instructions) "informing the jury what facts, if proven" would have warranted the jury in returning a verdict for defendant on his counterclaim [Dorman v. East St. Louis Ry. Co., 335 Mo. 1082, 1092, 75 S.W.2d 854, 859], and that, for refusal of an instruction offered by his counsel in attempted discharge of that duty, defendant *is in no position to complain* unless the proffered instruction was "within the issues, *in proper form, correctly presenting (his) theory of the case.*" Salzman v. Athletic Tea Co., Mo.App., 236 S.W. 907, 908. (All emphasis herein is ours.)

■ The negligence sought to be submitted in instruction D-7 might be referred to appropriately as "one compound negligent act" [compare Devoto v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 355, 358], i. e., plaintiff's failure to maintain a proper lookout for defendant's automobile and to stop, slow down or swerve his own automobile. Although his duty to maintain a careful lookout was a continuous one, plaintiff's duty to act in

any other respect submitted in instruction D-7, i. e., to stop, slacken speed or swerve, would have arisen only when plaintiff saw or realized, or in the exercise of the highest degree of care could have seen or realized, that there was danger of a collision with defendant's automobile. Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577; Devoto v. St. Louis Public Service Co., Mo. App., 238 S.W.2d 66, 72–73; Id., Mo.App., 251 S.W.2d 355, 358–359; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, 114(4, 5); Rayburn v. Fricke, Mo.App., 243 S.W.2d 768, 770; Burke v. Renick, Mo. App., 249 S.W.2d 513, 517. But, instruction D-7 made no reference to, and required no finding concerning, the location or speed of either vehicle when plaintiff, in the maintenance of a proper lookout, could have seen defendant's automobile or become aware of impending danger; and, on the authority of the last-cited group of cases, the giving of instruction D-7, similar in form and substance to the instructions considered in those cases, might well have constituted reversible error.

In the instant case, the testimony was sharply-conflicting as to certain important factual matters, i. e., (1) the place from which and the time at which plaintiff, in the exercise of the highest degree of care, could have discovered defendant's westbound automobile, (2) the location of defendant's automobile when it first could have been sighted by plaintiff, and (3) the point of impact between the automobiles. We note also the significant admission by defendant that plaintiff entered the intersection first and "was probably halfway across the south side of Stanley Street" when defendant applied his brakes.

Reduced to its simplest terms, instruction D-7 directed a verdict upon nothing more than generalized findings that "plaintiff failed to keep a lookout for and to see the defendant's automobile * * * and failed to stop or slow down or swerve his automobile *so as to avoid the collision*, and that such failure, if any * * * directly caused the collision." Under instruc-

tion D-7, the jury might have returned a verdict for defendant irrespective of *his own* conduct and without even a generalized finding that *plaintiff* had failed to exercise the highest degree of care or was negligent. In fact, literal acceptance of instruction D-7 would have *compelled* a verdict for defendant, for obviously the conclusion would have been inescapable, *absent any restriction as to the place where and the time when plaintiff's duty to take precautionary action arose,* that the collision was caused by plaintiff's failure to maintain a lookout and to stop, slow down or swerve *"so as to avoid the collision."*

■ We determine the legal sufficiency of an instruction, without regard to hypertechnical niceties, by inquiring "whether average laymen have been sufficiently apprised of the necessary facts to be found by them and of the correct legal conclusions which follow" [Sauer v. Winkler, Mo., 263 S.W.2d 370, 374(2); Stoessel v. St. Louis Public Service Co., Mo., 269 S.W.2d 41, 43(2)], but issues dependent upon findings as to disputed facts "may not be cryptically submitted to and found by the jury on the hypothesis of abstractions only." Ketcham v. Thomas, Mo., 283 S.W. 2d 642, 651, and cases there cited. See also Rayburn v. Fricke, supra, 243 S.W.2d loc. cit. 771(1). No instruction, so lean and gaunt in its recitals and so generalized and abstract in its nature as is instruction D-7, has come to our attention as approved for submission of similar issues. See Randall v. Steelman, Mo.App., 294 S.W.2d 588, 593. And, by way of example, contrast the approved instructions quoted or epitomized in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 499; Barnes v. Vandergrift, 364 Mo. 829, 269 S.W.2d 13, 17; Lee v. Liberty Bell Oil Co., Mo., 291 S.W.2d 132, 136; Dennison v. Whaley, Mo.App., 285 S.W.2d 73, 76.

■ Having in mind also that a judgment should be reversed only for error "materially affecting the merits of the ac-

tion" [Section 512.160(2), RSMo 1949, V.A.M.S.] and that the question before us is whether the *refusal* of instruction D-7 constituted reversible error, *not* whether the *giving* of this instruction would have been such error—"a distinction which is of importance in determining the measure of exactitude which the reviewing court will demand of the instruction" [Walnut Park Loan & Investment Ass'n v. Hennkens, Mo.App., 121 S.W.2d 179, 180]—we are satisfied that the trial court should not be convicted of reversible error for refusal to give instruction D-7, and that the judgment for plaintiff on defendant's counterclaim should be affirmed.

RUARK, J., concurs in separate opinion of STONE, J.