Oscar Louis HESS, Appellant,

v.

Thomas MANZELLA, d/b/a American Cab Company, Respondent.

No. 22812.

Kansas City Court of Appeals.

Missouri.

Nov. 3, 1958.

C. William Garver, Walter A. Raymond, Kansas City, for appellant.

John C. Russell, Donald E. Raymond, Kansas City, for respondent.

SPERRY, Commissioner.

This is a suit for damages to the person and property of plaintiff, Oscar Louis Hess, when his automobile and a taxicab of de-fendant, Thomas Manzella, collided on a street in Kansas City. Plaintiff had a ver-dict and judgment in the amount of $7,500, but the court granted a new trial, giving as its reason therefor error in instruction 1. Plaintiff appealed.

The collision occurred on July 1, 1955, at about 5:30 P. M. Visibility was good and the streets were dry. Plaintiff testified to the effect that he was operating his vehicle on West Pennway, proceeding south. He stopped at a point in the left hand lane for southbound traffic, with the front end of his automobile some seven feet south of the center line of 25th, and signaled, by hand and by directional device, for a left turn; that an automobile was about 10 feet south of 25th Street, and was about to enter the intersection; that plaintiff waited for it to clear; that after that vehicle passed, plain-tiff again looked to the south and saw de-fendant's taxi traveling north on West Pennway, some 250 feet distant, in the right lane; that the taxi was traveling at a speed of 30 miles per hour; that plaintiff shifted gear and proceeded, in low gear, to make a left turn; that at that time an automobile approached and entered the intersection from the east; that plaintiff stopped and shifted his attention to that vehicle, to see in what direction it would proceed; that at that time the front of plaintiff's car was about half way across the last, or outside, northbound traffic lane of West Pennway; that he heard "the squeal of brakes," look-ed south, and saw defendant's taxi, some 25 feet away, turning and skidding on the pavement, at a speed of 30 miles per hour, swerving to the right; that West Pennway has two north and two southbound traffic lanes, as well as an outer lane, for parking, on either side of the street; that when he saw defendant's taxi skidding toward him, plaintiff accelerated speed in an effort to escape, but the vehicles collided.

There was evidence to the effect that de-fendant's taxi left skid marks from a point 8 or 9 feet south of the intersection to the point of collision, some 15 or 16 feet north of the south line of the intersection. There

were two such marks, the east one being some five feet west of the east curb line of Pennway. The skid marks were in the outside, or east northbound traffic lane.

Mr. Bonner, operator of the taxi, testified to the effect that he was proceeding north, at a speed of 25 miles per hour; that, when he was within 18 or 20 feet of the intersection, plaintiff's car started a left turn in front of him; that he applied his brakes and swerved to the right; that, when he first saw him, plaintiff was seven or eight feet into the intersection, in the west center lane, proceeding south; that, when the impact occurred, the taxi was almost stopped; that he could not swerve the taxi to the left, because there was a car following him in that traffic lane, and another car was coming south, so that, had he swerved to the left, he might have caused a three way collision; that, after the collision, plaintiff said that he did not see the taxi; that, at 20 miles per hour, the taxi could be stopped within 30 feet; that, at 25 miles, it could be stopped within 35 to 40 feet; that he saw plaintiff's car before it began its left turn, but he did not know it would turn; that the taxi was 18 to 20 feet south of the intersection when plaintiff's car began to turn. Witness admitted that he signed a statement wherein he stated that he first saw plaintiff's car when it was entering the right hand northbound traffic lane; that the taxi was then 18 or 20 feet south of the intersection; that plaintiff's car was then turning left to proceed east on 25th Street.

The above is sufficient of the evidence for the purpose of disposing of the issues presented.

■ Defendant's contention that plaintiff failed to make a submissible case must be denied. Defendant also urges that the evidence establishes plaintiff's contributory negligence as a matter of law. With that contention we cannot agree.

■ The real issue here is whether plaintiff's verdict directing instruction 1 is prejudicially erroneous, as was held by the trial court.

The instruction is as follows:

"The Court instructs the jury that it is the duty of the driver of a motor vehicle to exercise the highest degree of care in its operation on the public streets of Kansas City, Missouri.

"You are, therefore, instructed that if you find and believe from the evidence that on or about July 1, 1955, plaintiff, Oscar Hess, was making a left turn from south on West Pennway to east on 25th Street, after having given a proper signal and had cleared 44 feet of said West Pennway and that in an interval of time and space thereafter a collision occurred between plaintiff's and defendant's vehicles at a point in the southeast quadrant of said intersection, when the front end of plaintiff's vehicle was 7 feet from the east curbline of West Pennway, if so, and if you further find that the taxi cab of defendant, Thomas Manzella, doing business as American Cab Company, was being operated by his agent, servant and employee, Ernest F. Bonner, approached said intersection from a southerly direction at a speed of about 30 miles per hour, if so, and although he had a clear view ahead for one block, did not see plaintiff's automobile in the intersection until within 20 to 25 feet of the south curb line of 25th Street, when plaintiff's automobile was already in the intersection, and thereafter applied his brakes, leaving burned tire skid marks for 10 to 12 feet, if so, and turned the defendant's taxi cab to the right or east, with a resulting collision with plaintiff's eastbound automobile, if so, and defendant's agent, servant and employee *could or may have* avoided a collision

by slowing his speed, stopping, or turning aside to his left, but failed so to do, if so, and if you find and believe from the evidence the defendant was guilty of negligence in such respects, and that as a direct and proximate result thereof plaintiff was injured and suffered damages, then your verdict must be for the plaintiff and against the defendant." (Emphasis ours.)

Plaintiff's pleaded negligence consisted of failure of defendant's driver to keep a vigilant lookout ahead for traffic, failure to keep the taxi under proper control, excessive speed, and failure to stop, slacken speed or swerve. He pleaded three acts of primary negligence and coupled them with a charge of humanitarian negligence. See Douglas v. Whitledge, Mo.App., 302 S.W.2d 294.

The instruction, as given, comingling both humanitarian and primary negligence, without covering the whole situation as to either, only tended to confuse the jury as to the issues they were to try. Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, 395. It is erroneous, Douglas v. Whitledge, supra, at page 302. It is erroneous for the reasons stated in Douglas v. Whitledge, supra, in the separate concurring opinion of Stone, J., and Ruark, J., paragraph 7, pages 303, 304; Thaller v. Skinner & Kennedy Co., Mo.App., 307 S.W.2d 734, 737.

The order of the trial court sustaining the motion for a new trial is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The order of the trial court sustaining the motion for a new trial is affirmed.